HENRY SCHMOELE et al., complainants-appellants,

*v.*

ATLANTIC CITY RAILROAD COMPANY, defendant-respondent.

[Argued February 9th, 1932. Decided May 16th, 1932.]

*Messrs. Bleakly, Stockwell & Burling,* for the complainants-appellants.

*Messrs. French, Richards & Bradley,* for the defendant-respondent.

The opinion of the court was delivered by

CASE, J.

This is an appeal from a decree of the court of chancery which dismissed the appellant's bill upon the ground that the

averments of the bill did not sustain the relief sought. The bill was to compel specific performance of a contract, dated June 9th, 1877, wherein the Philadelphia and Atlantic City Railway Company agreed to give certain free annual passes over the line of its railroad. The facts herein assumed are from the allegations in the bill and the exhibits annexed to and forming part of the bill.

Under date of June 9th, 1877, William Ford Schmoele, Henry Schmoele, Charles Schmoele and William Ford Schmoele as trustee, "in consideration of the premises of the sum of one dollar and eight full paid shares of the capital stock of said corporation * * * in hand well and truly paid, the receipt whereof is hereby acknowledged, and a certain agreement bearing even date herewith," conveyed a right of way over certain lands in the townships of Mullica and Galloway, in the county of Atlantic to the Philadelphia and Atlantic City Railway Company. According to the body of the deed, as printed in the record, William Ford Schmoele as trustee was the only grantor, but we assume this to be a printer's mistake. The deed contained convenants of seizin against encumbrances, of authority to convey and of peaceable possession. It contained no reference to the agreement except the mention of it in specifying the consideration as above quoted. The grant was "to have, hold, occupy, possess and enjoy the same for the purposes aforesaid to the use of said corporation, its successors and assigns, as long as the same shall be used for the purpose of a railroad and no longer."

On the same day the Philadelphia and Atlantic City Railway Company, as party of the first part, entered into an agreement in writing with the Schmoeles, as parties of the second part, reciting that the parties of the second part had, by a deed of the same date, granted and conveyed· unto the party of the first part, its successors and assigns, a right of way for the purposes of its railroad and setting forth that the Philadelphia and Atlantic City Railway Company "in consideration of the premises doth hereby for itself and its successors covenant and agree to and with the said parties of the second part to give to the said Henry Schmoele or in the

event of his death to his personal representatives, or to such person as he, or in the event of his death, such personal representative shall designate annually, during the first week in January of each and every year during its occupation of said lands free yearly passes over the line of its railroad, for eleven persons to be named by said Henry Schmoele or in the event of his death by his personal representative, before said passes are issued."

The property of the Philadelphia and Atlantic City Railway Company, including the right of way in question, was on October 13th, 1883, sold and conveyed by Peter L. Voorhees, master, by virtue of a decree in chancery on the foreclosure of a mortgage given by the railway company, to one George R. Kaercher and on May 13th, 1884, was conveyed by Kaercher to the Philadelphia and Atlantic City Railroad Company, which, by mergers and consolidations, in 1901, became the Atlantic City Railroad Company, the present defendant.

Railroad passes were issued to the complainants or the persons designated until the year 1930 when the defendant company notified the complainants that it was not bound by the terms of the agreement of June 9th, 1877, and that it would issue no further passes. The complainants thereupon filed their bill praying that the defendant be required to specifically perform that agreement by issuing and delivering to them the designated passes. The court below is dismissing the bill considered that the facts of the case brought it within the rule stated by the court of chancery in *Perkins* v. *Public Service Railway Co., 87 N. J. Eq. 134,* that the agreement, being for the issue of passes, was contrary to the provisions of the Utilities act of April 21st, 1911 (*P. L. 1911 p. 374*), and that the performance of the agreement would render the parties guilty of a misdemeanor. The vice-chancellor seems not to have given weight to the expression by Chancellor Walker in the opinion of this court in *Public Service Electric Co.* v. *Board of Public Utility Commissioners, 88 N. J. Law 603,* to the effect that the statute referred to is without retroactive effect and that it does not operate upon an agreement

that was lawful when made and that antedated the statute. Without disputing the legality of the agreement when made, the respondent would avoid the force of the opinion by the insistment that the language referred to was *obiter*. We find it unnecessary to consider either of the cases mentioned for the reason that we reach our conclusions independently of the Public Utilities statute and of any question of public policy presented thereby.

The complainants necessarily ground their case in the pass agreement of June 9th, 1877. To succeed, they must obligate the defendant company to the terms of that contract. This they first seek to do by asserting that the defendant company adopted the contract. In support of that assertion it is said that for a number of years the defendant did issue the passes. It does not appear that the defendant company in continuing the practice of issuing passes received any consideration or had actual knowledge of the agreement. The complainants did not, relying thereon, give up anything of value or suffer any detriment. The use and occupation by the defendant of the right by way were under the deed, not under the agreement. The fact that the deed was not recorded until April 5th, 1886, has little bearing. We think that the act of the defendant in continuing for a time to issue the passes was not, in itself, an adoption of the contract.

It is next said that the agreement to issue passes amounts to a covenant running with the land. But we find, in the terms of the agreement and in the incident of its execution, none of the characteristic aspects of such a covenant. We are inclined to think that the parties did not intend the agreement to be such; particularly since the right thus created was purely personal, cut off from all interest in the land. Under the agreement it was not necessary that any person be designated to receive a pass, or that the individual who should exercise the power of designation, should be the owner of, or have the slightest interest in, the lands over which the right of way extends, or of the lands continguous thereto. Had the parties intended to create a covenant running with the land, the simple and normal procedure woud have been

to incorporate that provision in the deed. Not only does the deed omit the covenant but it does not incorporate the provisions of the agreement, either in terms or by reference; nor does it make compliance with the agreement a condition of the grant; and the agreement deals with the issue of passes and nothing else. There appears to have been a studied effort to disassociate the obligation to issue passes from the operation of the deed. The consideration for the deed—the sum of one dollar, eight shares of capital stock of the original grantee and "a certain agreement bearing even date" therewith—was delivered into the hands of the grantors. In the sense of delivery, the consideration for the deed was all "paid." The Philadelphia and Atlantic City Railway Company, by the terms of the agreement, undertook "for itself and its successors" to do the things therein laid against it. We must assume that the use of the single word "successors" was intentional and purposeful. That term means, ordinarily, in the case of a corporation, another corporation which, by a process of amalgamation, consolidation or duly authorized legal succession has become invested with the rights and has assumed the burdens of the first corporation. *Hanna* v. *Florence Iron Co., 222 N. Y. 290; 118 N. E. Rep. 629.* As applied to a railroad corporation it ordinarily means corporate successors and not an independent corporation buying the property. *Mississippi Valley Trust Co.* v. *Southern Trust Co., 261 Fed. Rep. 765.* The obligation of the agreement, by its terms, seems to be personal to the signatory company and to such other corporations as might succeed to its corporate entity. The defendant is not shown to be of that class.

It is further asserted that the covenant to issue the passes is the equivalent of a covenant to pay rent by a reservation in the deed and therefore runs with the land. The single similarity between rent and the issuing of passes is that the Philadelphia and Atlantic City Railway Company undertook, in the agreement, to issue the passes "each and every year during its occupation of said lands." Rent, strictly, refers to the compensation received by a landlord for the use of land

leased. There is no suggestion that Henry Schmoele, or any of the other complainants or any of the original grantors, now owns a reversionary interest in the right of way or the remainder interest or any interest in the land upon which the right of way is a burden. Whatever remedy may be appropriate to the collection of rent, or of payments in the nature of rent, the moving party must show himself to be one to whom payments of that nature should be presently made.

The obvious care that the grantors and the grantee took to make the pass agreement a thing separate and apart from the deed of grant favors the belief that it was the intention of the parties not to create a covenant running with the land. The use, in that agreement, of words suitable to an obligation personal to the corporation executing it, and not artistic for the purpose of creating a covenant binding upon subsequent transferees of the right of way, further encourages that belief. Of lesser weight, but consistent therewith, is the severance of the right to the passes from ownership of the land.

It is also urged by the appellant that even if the covenant to issue passes should be held not strictly one running with the land yet it is so related to the use and occupancy of that land as to make it inequitable that defendant should take and hold the benefits of the covenant and withhold the consideration forming the basis of the occupancy. This fails to appreciate the duality of the deed and the agreement and makes no note of the individual characteristics of these instruments. The appellants seek the remedy of specific performance. To succeed therein they must show a clear right. Assuming all the allegations of the bill to be true, the complainants have yet failed to set up so clear and conclusive a right against the defendant as to merit the remedy of specific performance.

The bill of complaint was properly dismissed. The judgment below will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, KERNEY, JJ. 14.

*For reversal*—None.