LITTLE ROCK UNIVERSITY et al and UNIVERSITY OF ARKANSAS et al *v.* The George W. DONAGHEY FOUNDATION et al and LITTLE ROCK SCHOOL DISTRICT et al

5-5945                                                    483 S.W. 2d 230

Opinion delivered July 17, 1972

[Rehearing denied August 28, 1972.]

*Ray Trammell,* for appellants.

*Robert V. Light, Smith Williams, Friday, Eldredge & Clark,* for appellees.

FRANK HOLT, Justice. This appeal is a sequel to other cases involving the interpretation of the provision of a charitable trust established in 1929 by Governor George W. Donaghey and his wife for the benefit of Little Rock Junior College, a private institution, and contingently, a public school or schools of the Little Rock school system. The history and trust provisions are set forth in *Little Rock Junior College* v. *The Geo. W. Donaghey Foundation,* 224 Ark. 895, 277 S. W. 2d 79 (1955). There the court held that the Trustees did not have the authority to withhold the trust's profits from the private college merely because it expanded from a two-year junior college to a four-year school. The expansion did not alter the school's identity or status as the primary beneficiary of the trust.

In *Greene v. Thompson,* 227 Ark. 1089, 305 S. W. 2d 136 (1957), we recognized that if the Directors of the Little Rock Public School District refused to continue to supervise the operation of the private college then the power of equity could be invoked to prevent a discontinuance of payment of the trust funds to the designated primary beneficiary of the trust.

In *Donaghey Foundation v. LRU,* 231 Ark. 748, 332 S. W. 2d 497 (1960), the Little Rock School Board's officials had actively refused to continue supervising the operation of the college (then Little Rock University) and surrendered the directorship of the school to a private corporation. The trust's provisions were again interpretated and this court held that the refusal of the School District to supervise the college would not prevent an innocent beneficiary from receiving the proceeds of the trust. Therefore, Little Rock University should continue as the primary beneficiary and the funds could not be diverted to the Little Rock Public School system, the contingent beneficiary, until there was "a change of circumstances." In doing so, we observed that the primary purpose of the Donagheys, the settlors, was "in aiding the establishment of an institution of higher learning in this locality, designed primarily to accommodate prospective students from this area."

In 1969 Little Rock University was merged by mutual agreement and a legislative act (Act 35 of Acts of Arkansas, 1969) with the University of Arkansas. The merger provides that the educational functions of the college are to be continued at the same location in Little Rock, using the same faculty, buildings, facilities and land. Subsequent to this merger, the Trustees of Donaghey Trust brought this action against Little Rock University and its Trustees, the Little Rock School District and its Board of Directors, the University of Arkansas and its Trustees, and the Donaghey heirs, seeking a declaratory judgment defining the Donaghey Trustees' powers, duties, and obligations, and the respective rights of the parties. Specifically, the court was requested to determine:

"(1) May Foundation use net income to provide ad-

ditional funds for the chair or chairs at UALR, in excess of appropriations made by State legislature, and to provide other supplemental services to said institution within sole discretion of trustees of Foundation?

(2) Is the merger by Act 390 such a change of circumstances that Foundation and its trustees have an obligation to pay net income to some public school or schools in City of Little Rock which are under supervision of Little Rock School District?

(3) In the event the Court should determine that plaintiff's do not have authority to exercise discretion to apply the net proceeds of the trust for a chair or chairs or to provide other supplemental services to UALR as may be otherwise determined in the sole discretion of plaintiffs, may the plaintiff's exercise the discretion granted to them in the said deed in trust executed by Donaghey and wife and pay net proceeds to a public school or schools in the city of Little Rock operated by or under the management or supervision of the Special School District of Little Rock?"

The Chancellor rendered a decree finding that the merger did not constitute "a change of circumstances" as envisioned by our decision in *Donaghey Foundation* v. *LRU, supra*; that UALR, governed by UA Board of Trustees, continues to be an eligible beneficiary of the trust; that the contingent beneficiary, also, continues as an eligible beneficiary; that the Trustees had no authority under the trust provisions to designate the proposed specific use of the trust funds by the beneficiary; that the Trustees have the discretionary authority to pay the trust income to a public school or schools of Little Rock rather than UALR; however, the Trustees could not arbitrarily or capriciously withdraw the benefits from UALR by designating the contingent beneficiary.

Appellants bring this appeal seeking a modification of that part of the decree which recognizes that the Donaghey Trustees may designate the contingent beneficiary where such designation is not arbitrary or capricious. Ap-

pellants contend, since no "change of circumstances" was found to exist, that, consistent with *Donaghey Foundation* v. *LRU, supra,* UALR is the only current primary beneficiary and is entitled to the unrestricted use of the trust funds. The appellee-Donaghey Trustees cross-appeal asserting that the lower court erred in refusing to permit them the authority to designate the proposed uses for which the funds could be expended once they are given to the beneficiary, UALR, which is the beneficiary the Donaghey Trustees expressly prefer. Appellee-Little Rock School District and its Board of Directors cross-appeal asserting that the merger of LRU with UA constituted a "change of circumstances" which renders UALR ineligible to receive further benefits from the Donaghey Trust; and, therefore, the Little Rock School District is presently the only eligible beneficiary. The Donaghey heirs do not appeal. Among these various contentions, we agree only with the assertion made by the Donaghey Trustees; namely, that they do have the authority to pay the trust funds to UALR and restrict the use of the funds as proposed by the Donaghey Trustees.

It appears that all of the parties are in agreement with the cardinal rule that in construing a trust instrument the intention of the settlor must be ascertained. The Donaghey Trust instrument provides in part:

"It is the object and purpose of this deed to convey the property herein described to the Trustees, their successors and assigns, for the purpose of creating a fund or foundation to be used for the sole and exclusive benefit of the present Little Rock Junior College, an institution of learning in said city, at the present time operated under the management of the Board of School Directors of the Special School District of Little Rock, Arkansas, investing said trustees with full discretion to select some other public school or schools in said city, operated by or under the management or supervision of the Board of School Directors of such Special School District of Little Rock and their successors in charge of the public schools in the said City of Little Rock in the event

the present Little Rock Junior College or its successors should, at any time, cease to be operated by or under the supervision of the public school authorities in said city. . . . "

"After paying all interest, principal, fixed charges, upkeep, insurance and all operating expenses maturing during any year, the Trustees may, annually (or more frequently if they deem best), pay over on January first of each year, all or such part of the net income from the said properties as they deem best; such payments shall be made to the proper public school authorities so that the same shall be applied for the maintenance and operation of said Little Rock Junior College or its successors or any other public school in said City of Little Rock, selected by the said Trustees in accordance with the authority heretofore expressed. In the event there should, at any time, be accumulations of net income under the terms hereof, the same may be expended for the purposes of this trust at such times and in such amounts as Trustees think best."

The settlors intended that the Trustees would have the right to exercise broad discretion in performing their unpaid task in administering this trust fund. Further, in this respect, the trust provides:

"***and in every respect to deal with and handle and manage said properties as an individual could do, said Trustees or their successors to be guided and limited only by the exercise of their best judgment in the interest of the fund and foundation and its objects and purposes."

Manifestly, these carefully selected original Trustees and their successors, who reside in Little Rock, are given the authority to spend the accumulated net income of the trust funds for the purposes of the trust at such a time and in such amounts as the Trustees deem best. In *Donaghey Foundation* v. *LRU, supra,* we recognized and approved the Trustees' discretionary authority, based upon their

expressed desire, to continue payments to LRU as the primary beneficiary and that this school would be entitled to continue to receive future income from the trust funds "until such time as there is a change of circumstances which would require the Trustees to withdraw financial support from the university, i.e., the Trustees cannot capriciously or arbitrarily withdraw this aid."

In the case at bar, it is the argument of the Donaghey Trustees that the merger of the schools, LRU with UA, constitutes a change of circumstances; and, therefore, they now have the discretionary authority to continue payment of the trust funds to UALR only upon condition that the funds be expended only for a chair or chairs or other supplemental services in excess of all legislative appropriations for the maintenance and operation of UALR. We think the Trustees are correct. Until LRU's dissolution it was a private institution and the successor to the orginal Little Rock Junior College. It is now a part of the University of Arkansas and a public institution. Legislative appropriation of public funds is now provided for its operation and maintenance. All of the assets of LRU were transferred to the UA and the school now is administered by the Board of Trustees of the UA. LRU's Board of Trustees relinquished all control, responsibility, and supervision of LRU to the Trustees of the UA. Now that UALR is a public institution supported by legislative appropriation of public funds, we note that Act 390 of the Acts of Arkansas, 1969, appropriated a total of $7,199,404 for personal services and operating expenses of UALR for the period ending June 30, 1971. Of that appropriation regular salaries constitute $5,000,000 and $2,169,404 is provided for maintenance and general operation together with $30,000 for extra help. We agree with the Donaghey Trustees that Governor Donaghey and his wife did not visualize in 1929 that in 1971 the fledgling junior college endowed by them would be primarily maintained and supported as a state public institution. Certainly we cannot agree that these settlors intended that the trust funds, now approximately $90,000 annually, would be commingled with the public funds appropriated by the legislature for the maintenance and general operation of what is now a public institution without the settlors'

Trustees having the right to exercise some authority and discretion which was expressly vested in them as previously indicated.

Furthermore, it presently appears that UALR is attended by students from 42 other states and 37 students from 17 foreign countries. Approximately 1/3 of the enrollment for the academic year 1970-1971 were non-residents of Pulaski County, coming from 72 of the counties other than Pulaski. The original Trustees and their successors are Little Rock residents. Presently the management of UALR is conducted by the UA Board of Trustees and only one of them lives in Little Rock.

The appellants point out that the trust funds of approximately $90,000 are to be used exclusively at and for UALR and in addition to any appropriations made by our legislature for the maintenance and operation of UALR; however, as a practical matter, we observe that the legislature is not prevented from taking into account the amount and source of these trust funds in determining the financial needs of UALR.

We hold that a sufficient "change of circumstance" has occurred as envisioned in *Donaghey Foundation* v. *LRU, supra;* furthermore, courts of equity have the power to authorize and sanction Trustees to deviate from the exact language of a charitable trust in order to preserve and accomplish the intention of the settlor and purposes of the trust. *Anderson* v. *Ryland,* 232 Ark. 335, 336 S. W. 2d 52 (1960); Rest., Trusts, § § § 167, 381, and 399; and 89 C.J.S. § 87 e (2).

In *Donaghey Foundation* v. *LRU, supra,* we recognized that the "prime objective in creating the [George W. Donaghey Foundation] was to aid the cause of higher education in Greater Little Rock." There we approved the express wishes of the Trustees to continue payment of the trust funds to LRU as being well within the discretionary authority delegated to them by the terms of the trust. Likewise, in the case at bar, we are of the view that the Trustees' express desire and intention to continue paying these

funds to UALR as the primary beneficiary for the stated restricted purposes is well within the Trustees' discretionary authority vested in them and conforms to the purposes of the trust and the intentions of the settlors. To that extent only the decree is modified.

Affirmed as modified.

FOGLEMAN, J., dissenting.

JOHN A. FOGLEMAN, Justice, dissenting. I do not agree that the trustees of the Donaghey Foundation have the authority to dictate or determine the uses to be made by the recipient of the income from the Donaghey Trust. It is not the function of the courts to write into the trust any terms not incorporated by its creators. Neither do the trustees have that authority, either by law or by the terms of the trust instrument. *Greene* v. *Thompson*, 227 Ark. 1089, 305 S.W. 2d 136. It is the responsibility of the trustees and the courts to see that the terms of the trust are carried out as nearly as possible. In order to say that the trustees may put conditions upon the use of funds paid over, it is necessary to engraft upon this trust instrument a term not to be found within its four corners.

I do not agree that a change of circumstances envisioned as a possibility in *Donaghey Foundation* v. *Little Rock University*, 231 Ark. 748, 332 S.W. 2d 497, has taken place. According to the language of that opinion, the change of circumstances must be such as *would require* the Donaghey trustees to withdraw financial support. While the court avoided defining the term "change of circumstances" because of the realization that many unforeseen situations might arise, the current developments do not approximate any of the examples given in that opinion, i.e., a permanent closing of the college, the relocation of the college some distance away, or other change of similar moment. Little Rock University has not been closed, either permanently or temporarily, it has not been relocated at all, and the merger is not of similar moment to a closing or relocation. The

chancellor specifically found, upon the evidence before him, that there was no such change, and I agree.

A review of the terms of the trust is a necessary background to such a determination. Little Rock Junior College was the intended beneficiary of the trust. Its status as a private institution, if indeed a junior college operated by the board of directors of a public school district which used teachers of the district and was housed in a physical plant owned by it for public school purposes was then a private institution, was either not recognized or was considered insignificant by Governor and Mrs. Donaghey. See *Donaghey Foundation* v. *Little Rock University,* supra. The beneficiary was not designated as a private institution in the trust instrument. It was never called a private institution in this court until our decision in *Donaghey Foundation* v. *Little Rock University,* supra, at which time it was described in the Donaghey trust as "an institution of learning *in*[1] said city." As a matter of fact, it was not chartered as an eleemosynary corporation until some ten years after the death of Governor Donaghey. See *Little Rock Junior College* v. *George W. Donaghey Foundation,* 224 Ark. 895, 277 S.W. 2d 79. The Donaghey trustees were given discretion to select "some *other public school*[2] or schools *in*[3] said city . . . in the event the present Little Rock Junior College or its *successors*[4] should at any time, cease to be operated by or under the supervision of the public school authorities in said city. . .Payments of income are to be made to *proper public*[5] school authorities. . . for the maintenance and operation of Little Rock Junior College or its *successors*[6] or *any other public school in*[7] said City of Little Rock." Clearly the idea that the institution to be nurtured by the Donaghey trust be a public institution supported from the public treasury rather than a private one, so abhorrent to the majority, posed no fears to Governor and Mrs. Donaghey.

The trustees of the foundation were not given discretion except for specific purposes. For instance, in the management, control and direction of the *property* of the trust, they are limited only by the exercise of their best judgment

---

[1—7]Emphasis mine.

in the interest of the fund and foundation and its objects and purposes. A similar discretion was granted with reference to the sale of trust property and investment of the net proceeds thereof. There is also broad discretion in the trustees to terminate the trust and to determine the times and amounts of payments to the beneficiary, matters which I will treat later.

I submit that the University of Arkansas at Little Rock is the successor of Little Rock Junior College and stands precisely in the position of Little Rock University. In *Little Rock Junior College* v. *George W. Donaghey Foundation,* supra, this court held that the incorporation of the school and its conversion from a junior college to a four-year college did not change the identity of the beneficiary. This pertinent language appears in that opinion by Mr. Justice Robinson:

> ***the mere fact that the school authorities decided to expand into a four year college in no way changes the identity of the school and does not make of it a school other than the one that the trust was set up to help. *Little Rock Junior College* is merely the name of the school; it is inconceivable that the settlors of the trust used the words in any other way. Loving the college as they did, it is unthinkable that they wanted to help it only if it remained limited in the educational advantages it had to offer, and did not want to give it any further aid if through their generosity the school was able to grow and become a great institution of learning. It is true the deed uses the words "the present Little Rock Junior College". The deed provides: "It is the object and purpose of this deed to convey the property herein described to said trustees, their successors and assigns, for the purpose of creating a fund or foundation to be used for the sole and exclusive benefit of the present Little Rock Junior College". But "the present Little Rock Junior College" is the very same school that wants to expand into a four year college, and by so expanding it does not become another school. When John Doe, a boy 15 years of age, grows up and becomes a man 21 years of age, he is still the same John

Doe. It is suggested that the name of the school has now been changed to Donaghey College; in the future another school may adopt the name Little Rock Junior College. That is when the wording of the deed in trust "the present Little Rock Junior College" would come into play; the new school adopting that name would not be the *present* Little Rock Junior College.

\* \* \*

Here the principal issue in dispute is the meaning in which the settlor of the trust used the words "the present Little Rock Junior College". Were the words used as meaning a Junior College only, or were they used in the sense of meaning the name of the school endowed?

It does not seem to me that the status of UALR, the "resulting institution," as the successor to LRU (the changed name of the institution once called Little Rock Junior College) or to Little Rock Junior College itself is subject to challenge. No recitation of facts in addition to those stated in the majority opinion and elsewhere in this opinion is necessary to answer any question that might exist. In any merger, the designated survivor is presumably the successor to the merged components. See, e.g., Ark. Stat. Ann. § 64-705 (Repl. 1966). The resultant or surviving corporation in a merger situation is the successor to a constitutent corporation. *First National Bank of Birmingham* v. *Adams*, 281 Ala. 404, 203 So. 2d 124 (1967). In *Arlington Hotel Co.* v. *Rector*, 124 Ark. 90, 186 S.W. 622, an important issue was whether the "new" Arlington Hotel Company was the successor to the "old" corporation bearing the same name. No merger was involved, but there is a great factual similarity to the situation before us insofar as LRU and UALR are concerned. The original Arlington Hotel Company leased the hotel property from the United States. It was chartered for a term of 20 years. Two years after the charter expired, the government demanded that the corporation furnish evidence of either a new charter or an extension of the old one. The "new" corporation was then organized with the same officers as the old one. The hotel operation was carried on by the officers of the first corporation during

the interim between the expiration of the charter of the old company and the organization of the new one. The old company agreed to, and did, convey all its assets and property to the new company, and the new company agreed to assume all indebtedness of the old one, and to issue its paid up stock to the stockholders of the old company, share for share. Thereafter, a new lease of the hotel property was entered into, and the existing lease with the old company canceled. The question was whether the new company was liable upon a consent judgment against the old to make annual payments to one of its incorporators "as long as the Arlington Hotel Company, or its successors or assigns continued to occupy the Arlington Hotel site. It was held that the new company was the successor of the old.

Ordinarily the word "successors," in the case of a corporation, means another corporation which, by a process of amalgamation, consolidation, or duly authorized legal succession, has become invested with the rights, and has assumed the burdens of the first corporation. *Schmoele* v. *Atlantic City R. Co.,* 110 N.J. Eq. 597, 160 A. 524 (1932); *Hanna* v. *Florence Iron Co. of Wisconsin,* 222 N.Y. 290, 118 N.E. 629 (1918). UALR fits that definition. By the terms of the merger agreement it has certainly assumed the obligations of LRU and is invested with its rights. The constituent corporation lives as a component part of the surviving corporation insofar as the rights, franchises and privileges enjoyed by the constituent corporation are concerned. *First National Bank of Birmingham* v. *Adams,* supra.

The 15-year-old John Doe retained his identity when he reached maturity. I submit that he is still the same person in spite of his marriage.

In *Greene* v. *Thompson,* supra, we recognized that should the board of directors of the Little Rock School District refuse to operate or supervise the Little Rock Junior College (soon to become Little Rock Univeristy) the power of equity to prevent the loss of the foundation funds might be brought into play. That situation did come into existence. The charter of Little Rock University was amended to vest the management and administration

of the corporation in a board of trustees if the board of directors of the Little Rock School District should refuse to operate or supervise the corporation. This board promptly declined to continue to operate the university. Still, this court held that Little Rock University, as the primary beneficiary of the Donaghey trust, should not be permitted to suffer the loss of support from that trust. I do not agree with the majority's analysis of our decision in that case as an approval of the trustees' discretionary authority, based upon their expressed desire. The following is a portion of the chancery decree which was before the court and was unaffected by the modification made here:

> "(a) The George W. Donaghey Foundation and its Trustees may not withhold from Little Rock University the income from The George W. Donaghey Trust because of the refusal of the Board of Directors of Little Rock School District to supervise or operate Little Rock University."

Furthermore, I find no basis for saying that the idea of the use of tax funds for support and maintenance of the institution nurtured into maturity with the substantial aid of the Donaghey trust could have been a bugaboo which would have caused Governor and Mrs. Donaghey to have any qualms about support of the institution or to have thought that such an eventuality, either likely or unlikely, would cause their trustees to withdraw support from the institution. Their dream was not of the ready availability of higher education by a private institution. It was of the existence of such educational facilities *in* Little Rock. This idea seems to have been prevalent in the thinking of the court in all previous cases involving this trust, and I can perceive of no reason why it should be now abandoned or beclouded. In deciding that a four-year college could qualify as well as a two-year college this court said:

> It is argued that Governor Donaghey was interested only in a junior college because he know of the trials and tribulations of those unable to obtain a higher education, and he wanted to make a junior college available to those unable to bear the expense of a full four year course and that he endowed a "junior college" as such and gave the trustees of the Donaghey

Foundation the discretion of selecting some other school as a beneficiary of the trust in the event the Little Rock Junior College ceased to be a junior college. But it is shown conclusively by the writings of both the Governor and Mrs. Donaghey that it was their fondest hope that the Little Rock Junior College would grow into a four year school. Governor Donaghey wrote in his *Autobiography*: "* * * When the Donaghey Foundation Board meets, we have great plans for improving the property, and perhaps for constructing a building on the site where the burned theater stood. Shall our plans and dreams lead to a four year college, with a fine new plant of its own? The very thought makes me feel stronger and younger." And the Governor wrote in his volume *Home Spun Philosophy*: "Then, whoever aids in the development of this human power, for any of the vocations of life, renders his community *and State* a forward service. That is the object of the establishment of the Donaghey Foundation. Today it is sponsoring the fortunes of Little Rock Junior College. This college is affording the young people of *Greater Little Rock and the contiguous territory* the opportunity of a two-year course in college work with the object of eventually making it four years." (Emphasis mine.) *Little Rock Junior College* v. *George W. Donaghey Foundation,* supra.

Again, in *Donaghey Foundation* v. *Little Rock University,* supra, we said:

Unquestionably, and this is admitted by all parties, Governor Donaghey's prime objective in creating the trust was to aid the cause of higher education in Greater Little Rock. This is well shown in his Autobiography and Homespun Philosophy, which are discussed in Little Rock Junior College v. Geo. W. Donaghey Foundation, supra. A detailed discussion of his intent is therefore unnecessary, but we quote a few excerpts as a means of emphasizing the Governor's strong views. From Homespun Philosophy:

"I wonder how many of our citizens have made an

estimate of what higher education has cost Greater Little Rock during the last fifty years. That is to say, how much actual cash has been sent out of the city to pay for it, leaving out the questions of the thousands of poor boys and girls who are unable to foot the expense of going away from home to college. Suppose we say that Little Rock has, during the past fifty years, sent an average of 200 boys and girls a year away to college, which would seem to be a reasonable approximate. Then suppose we estimate that the cash outlay has been an average of a thousand dollars per annum. It is then but a simple calculation to find that the cost would amount to the stupendous sum of 10 millions of dollars, ten millions of dollars wasted on the winds of negligence; for the neglect of not building an institution of higher education at home and thereby having ten millions of dollars now invested in Little Rock in one of the best universities in all of the South. * * *

"Boys and girls educated at home not only are in the majority and stand together in molding the opinions of the State, but also are just about as well equipped for the affairs of life as those sent away to school. In other words, sending a child to Yale or Harvard or any other college does little more to educate him than sending him to a home institution. Textbooks and lectures by trained instructors can be studied and heard at one place as well as another."

From the autobiography:

"After frequent consultations with the school authorities and trustees I was convinced that no greater field for educational development exists anywhere than can be found right here in Little Rock where hundreds of boys and girls after graduating from high school are unable to advance further through a course in college."

The majority position on the meager contribution of the Donaghey trust to the overall operational expense

and the commingling of the trust income with tax funds appropriated is not quite consistent with the history of the trust and litigation pertaining thereto. In *Little Rock Junior College* v. *George W. Donaghey Foundation,* supra, I find this interesting information:

> At the time the trust was set up the Little Rock Junior College was a two year school. During the first years of the trust, due to a mortgage indebtedness on the property conveyed to the trust, only a comparatively small amount was paid to the college; but subsequent to 1939 payments increased. In 1950 the payment by the trust to the college was in the sum of $45,037.50, and in 1953 it was $75,050.

And in *Donaghey Foundation* v. *Little Rock University,* supra, this is added:

> Originally, the Little Rock Junior College used the Little Rock Public School buildings at a time when those buildings were not being used for common school education. Teachers of the Little Rock public schools were used by the college. In other words, the operation of the college was a part-time operation, * * *. The college itself has likewise steadily grown. From 421 students in 1929, the enrollment has increased to 1,485. Compared to a 1929-30 budget of $36,874.33, we find that the present budget calls for $543,276, of which the University is dependent upon the Foundation for $90,000.

This growth and the demand for greater educational facilities has simply continued and resulted in the merger of LRU into the University of Arkansas, because LRU was no longer able to cope with the demands made upon it. The General Assembly found and declared that the LRU board and that of the University of Arkansas jointly concluded "that imperative measures must be taken to satisfy the increasing demands for educational opportunity for the young people of Central Arkansas." See Preamble to Act 35 of 1969.

The merger agreement recites as one of its bases the concern of the LRU board for providing "quality higher education and educational leadership suitable to the physical growth and to the economic and cultural development of Central Arkansas and of the State." It also recited that "a plan had been agreed upon for the *expansion of both institutions*"; that the plan would bring to the Central Arkansas region the "benefits of a State University while retaining the loyal support and contributions so demonstrably evidenced in the creation and the rapid growth of LRU, leading thereby to the assured enrichment of the quality of the contribution LRU, in undergraduate fields, . . . [is] now making to the educational well being of the State of Arkansas as a whole and of Central Arkansas in particular"; that "it has been determined that it is to the best interests of the parties" to transfer assets "so that the *institution* of higher education now known as LRU will become a part of the University of Arkansas"; that the " 'resulting institution' means LRU from and after the date of transfer and refers to a major campus of the University of Arkansas located at Little Rock, Arkansas"; that the name "University of Arkansas at Little Rock" will be assigned to the resulting institution, as "descriptive of its broad function, its location and the fact that it is a major campus of the University of Arkansas"; that "University of Arkansas shall conduct in the resulting institution. . . a program of undergraduate and graduate instruction, research and educational services, as dictated primarily by the needs of Central Arkansas . . ."

It can readily be seen that the mission of LRU and of the Donaghey trust is being carried out and enhanced by the appropriations made by the state. The argument that the Donaghey trustees would somehow be deprived of some discretion formerly vested in them simply has no support, because they never had the discretion to dictate how the contributions of the trust were spent by the recipient and there is no language in the trust instrument from which any such discretion can be inferred.

The most that can be said is that LRU, the resulting

institution, will have the means of enlarging from a four-year college to one also offering graduate degrees, and that the final responsibility for administration will again be in the hands of public school trustees. There is no substantial difference in this transition and the developments which brought the institution from a junior college to a four-year one and transferred the administrative responsibilities from the public school directors to the directors of an eleemosynary corporation, except that the changes bring still more and better education to the area heretofore served by LRU.

The merger could not be accomplished on the basis originally desired by the boards of the two institutions, i.e., so that tuition at UALR would be no greater than that at other campuses. An amendment to the merger agreement was necessary. In that amendment the parties agreed that the appropriation made by the 1969 General Assembly was sufficient to permit the merger to become effective, "when taken together with the *present financing of LRU,* including the maintenance of student fees at or approximating their present level." (Emphasis mine.) It was agreed that student tuition fees must remain at or near their existing level and gradually reduced as *financial resources of the resulting institution,* including state allocations in payment of its appropriations, become available in amounts sufficient to justify their reduction to the levels of other campuses. Withdrawal of the Donaghey Foundation support or its allocation to purposes specified by the Donaghey trustees will inevitably postpone this desired goal.

Worry about the legislature's withholding funds because of this anticipated $90,000 income seems chimerical to me. Two factors make it too uncertain to be taken into consideration. First, the Donaghey trustees are to pay over all or such part of the net income from the properties as they deem best, and accumulations of income may be expended for trust purposes at such times and in such amounts as the trustees think best. Secondly, at any time after July 1, 1979, the trustees may, by unanimous vote expend all or any part of the principal and accumulated

income for erecting or contributing to the erection of a permanent building or buildings to be devoted to the objects and purposes of the trust. Incidentally this latter possibility might enable a useful monument to the donors to be erected and thus give permanent identity to their contribution. It might well be that a tuition reduction will have been accomplished before this is done.

I cannot visualize Governor or Mrs. Donaghey's becoming concerned about "their institution's" drawing students from most of our counties, several states and even some foreign countries. I surmise that these facts are *supposed* to show a change in the character of the institution, but there is no showing that LRU, before merger, did not draw students from many counties, other states and even foreign countries. There is no indication that there was any tidal wave of students from outside Pulaski County upon announcement of the merger. This interesting bit of statistical information, I submit, is not indicative of any change of circumstances. Rather, it seems to demonstrate the need for such an institution, as Governor Donaghey envisioned, the excellence of the institution, the inability of LRU in its pre-merger status to continue to perform its mission, and the wisdom of the merger. A reading and rereading of the trust instruments, the facts stated and conclusions in our previous opinions convince me that Governor Donaghey was interested in having an excellent institution of higher learning *in* Little Rock, not for the benefit of Pulaski County students but for the benefit of the surrounding area. I find nothing to indicate any such provincialism in the thoughts of the Donagheys as is indicated by reference to enrollment data.

Since I feel that the preponderance of the evidence supports the chancellor's finding that there was no change of circumstances and since I can find no discretion to be exercised by the Donaghey trustees in the matter of expenditures, I would affirm the decree on cross-appeal and reverse on appeal.