T.C. Memo. 2004-68


UNITED STATES TAX COURT


ESTATE OF MERLE ALLEN WHITING, JR., DECEASED,
VICKI ANN WHITING, EXECUTRIX, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13268-01.                    Filed March 17, 2004.


<u>Keith Moser</u>, for petitioner.

<u>Edsel Ford Holman, Jr.</u>, for respondent.


MEMORANDUM OPINION


VASQUEZ, <u>Judge</u>:  Respondent determined a deficiency of

$206,612[1] in the Federal estate tax of the Estate of Merle Allen

Whiting, Jr. (decedent), and an addition to tax pursuant to

_____

    [1]  All amounts are rounded to the nearest dollar.

section 6651(a)(1)[2] of $10,331. The deficiency arises from respondent's disallowance of the marital deduction for a trust which held property valued at $533,762 at the time of decedent's death. The sole issue[3] for decision is whether under section 2056(b)(7) the surviving spouse's interest in the "Marital Deduction Trust" qualifies for the marital deduction.

Background

The parties submitted this case fully stipulated pursuant to Rule 122. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time the petition was filed, the mailing address for the estate and for the executrix was in Dewitt, Arkansas.

A.   Decedent's Estate Plan

Decedent was in the business of farm equipment sales. Around May 1996, 18 months before his death, decedent had an operation, after which the doctor informed him that he had terminal lung and colon cancer. Immediately following decedent's operation, the doctor estimated that decedent had a maximum of 2

---

[2]   Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3]   The parties stipulated that the estate's Federal estate tax return was late filed on Aug. 14, 1998, and that, to the extent that a Federal estate tax deficiency is finally determined, the failure-to-file addition to tax is applicable pursuant to sec. 6651(a)(1).

years to live.  Following his operation and terminal illness diagnosis, decedent ceased his regular activities.  Decedent did not have any treatments that would have attempted to cure or slow his cancer.

Decedent's certified public accountant informed him that he needed an estate plan.  On September 17, 1997, decedent and his wife, Vicki Ann Whiting (Mrs. Whiting), met with an attorney at the firm of Jewell & Moser concerning the drafting of an estate plan. Jewell & Moser is a six-attorney firm in Little Rock, Arkansas.  Two attorneys are Arkansas board recognized specialists in tax law.  One attorney is a certified public accountant.  Two attorneys have a master of laws in taxation.

On October 13, 1997, decedent and Mrs. Whiting executed the Merle Allen Whiting, Jr., and Vicki Ann Whiting Trust (the trust).  On the same date, decedent executed his last will and testament (the will).  Decedent was aware that he was terminally ill with lung and colon cancer when he executed the trust and the will.

The draftsman of the trust prepared only one draft for decedent to review and execute.  The intent of the draftsman was to create a marital deduction trust that qualified for the Federal estate tax marital deduction.  Decedent read the trust and the will without asking any questions or raising any objections.  Neither decedent nor Mrs. Whiting exchanged any

correspondence with the draftsman of the trust or the will.

On November 4, 1997, 22 days after executing the trust and the will, decedent died. He was 50 years old. Mrs. Whiting survived decedent. She was 48 years old when decedent died.

The trust was initially funded with $10. During the 22-day period between the date the trust was executed and the date of decedent's death, substantial amounts of decedent's real estate holdings were transferred to the trust as trust corpus. Upon decedent's death, life insurance proceeds also funded the trust.

B.    Terms of the Trust

1.    Merle Allen Whiting, Jr., and Vicki Ann Whiting Trust

Decedent and Mrs. Whiting were the grantors of the Merle Allen Whiting, Jr., and Vicki Ann Whiting Trust. While both grantors were alive, the trust was revocable.

Purpose. The stated purpose of the trust was to create a means "by which certain assets may be held for the benefit of the Grantor and the Grantor's loved ones * * * . It is the Grantor's intent in creating this trust that the Grantor's assets avoid probate at the time of the Grantor's death. All provisions of this trust shall be construed in such a manner as to best effect these intentions."

Grantors' Separate Trust Shares. Upon receipt of property in the trust, the trustee "shall establish an undivided separate trust share for Merle Allen Whiting, Jr., equal to fifty percent

(50%) of the property received and an undivided separate trust share for Vicki Ann Whiting equal to fifty percent (50%) of the property received."

Death of First Grantor.  Upon the death of the first grantor to die, "the Trustee shall divide the decedent's separate share of the trust into four (4) separate trusts."  The first trust is the "Marital Deduction Trust" (marital deduction trust).  The second trust is the "Madge Williams Whiting Evans Trust", established for decedent's mother.  The third trust is the "Courtney Brook Whiting Phaffenberger Trust", established for decedent's daughter.  The fourth trust is the "Non-Marital Deduction Trust".

The trust becomes irrevocable as to the deceased grantor's separate trust share immediately upon the death of the first grantor to die.  Additionally, "the surviving Grantor shall have no right or power * * * to alter, amend, modify, revoke or terminate this Trust Agreement * * * as to the deceased Grantor's separate trust share."

2.   Marital Deduction Trust

Amount of Distribution.  The amount of the distribution from decedent's separate trust share to the marital deduction trust, as stated in section 7.A. of the trust agreement, is as follows:

> A distribution shall be made to this trust of an amount equal to the excess, if any, of the decedent's taxable estate (computed without any marital deduction) plus the amount of the decedent's adjusted taxable

gifts, over the exemption equivalent of the then applicable unified credit against estate tax, said excess being reduced by the aggregate value (using federal estate tax values, as finally determined) of all property and interests in property included in the decedent's gross estate which qualifies for the federal estate tax marital deduction and which pass or have passed in a form which qualifies for such marital deduction from the decedent to the surviving spouse pursuant to Will, by operation of law, pursuant to contract or otherwise than by this provision.

The words "adjusted taxable gifts", "gross estate", "marital deduction", "pass or have passed", "taxable estate" and "unified credit against estate tax" shall have the same meanings as such words have under the Internal Revenue Code provisions applicable to the decedent's estate * * *.

* * * * * * *

Only assets that qualify for the marital deduction shall be available for selection by the Trustee in the fulfillment of this distribution. Each asset selected by the Trustee to be distributed in kind for the purpose of satisfying the amount of this distribution to the surviving spouse shall be valued for such purposes at the lower of:

(i) its fair market value at the time of distribution, or

(ii) its value for federal estate tax purposes * * * .

Although the decedent's intent in directing this method of valuation for distributions in kind in satisfaction of a pecuniary bequest is to eliminate any recognition of gain with respect to appreciated assets available for distribution, it also has the result of qualifying the marital deduction for estate tax purposes.

Terms. The relevant terms of the marital deduction trust, as stated in section 8 of the trust agreement, are as follows:

A. <u>Distribution of Income and Principal</u>. After
the payment of all reasonable and necessary expenses
incurred in the management of the trust, the trustee
shall distribute at least annually the net income of
the trust to or for the benefit of the surviving spouse
for the remainder of the surviving spouse's life. Any
income accrued, but undistributed, as of the date of
the surviving spouse's death shall be paid to the
surviving spouse's estate * * * .

The trustee is authorized to distribute to or for
the benefit of the surviving spouse so much of the
principal of this trust as in the trustee's absolute
discretion may be necessary or advisable for the
health, education, maintenance and support of the
surviving spouse.

The surviving spouse is authorized to withdraw
from the principal of this trust such additional
amounts as the surviving spouse may request, provided
that such distributions from the principal of this
trust shall not exceed in any calendar year the greater
of $5,000.00 or five percent (5%) of the value of the
principal of this trust * * * .

*　*　*　*　*　*　*

No distribution of the principal of this trust
* * * shall be made to or for the benefit of the
surviving spouse following the remarriage or
cohabitation of the surviving spouse.

B. <u>Termination of Trust</u>. This trust shall
terminate upon the surviving spouse's death, at which
time the remaining assets of this trust shall be
distributed as follows:

*　*　*　*　*　*　*

(2) The remaining balance shall be
distributed to or in trust for the benefit of
such persons or entities * * * as the
surviving spouse may appoint by specific
reference to this trust in the surviving
spouse's Last Will and Testament, provided
that no appointment shall be made to the
surviving spouse, the surviving spouse's
estate, the surviving spouse's creditors or

the creditors of the surviving spouse's estate.  In partial or complete default of an effective exercise of this special power of appointment, or in the event of the surviving spouse's remarriage or cohabitation, then the remaining assets of this trust shall be distributed in the same manner as provided in Section 10[4] of this trust.

C.  <u>Trustee</u>.  The following persons or entities shall serve as the trustee of this trust in the following order of priority:

(1) Surviving spouse.

(2) * * * However, in the event that Vicki Ann Whiting is the surviving spouse, her son, Charles Barry McKewen, shall serve as successor trustee.

* * * * * * *

D.  <u>Administrative Provisions</u>.  Sections 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26 and 27 * * * shall apply to this trust.

The trustee funded the marital deduction trust with various real estate properties and life insurance proceeds.  The value of the assets in the marital deduction trust was $533,762 at the date of decedent's death.

3.  <u>Disability Section</u>

Section 15 of the trust agreement (the disability section)

---

[4]  Sec. 10 of the trust agreement, "Termination of Trust", provides that upon the death of the second grantor to die, after payment of expenses, the remaining assets in the trust shall be divided into two equal shares.  The first share shall be distributed to the Charles Barry McKewen Trust, subject to the terms and condition of sec. 13 of the trust agreement.  The second share shall be distributed to the Stefanie Margo Patterson Bell Trust, subject to the terms and conditions of sec. 14 of the trust agreement.

provides:

       Age Requirement or Disability. If any person has not attained the age of thirty (30) years, or if any person who is, in the Trustee's opinion, disabled because of advanced age, illness or other cause when he or she becomes entitled to any distribution pursuant to any trust created by this Trust Agreement, then his or her separate share shall be held IN TRUST for the uses and purposes and subject to the terms and conditions hereinafter set forth:

       A. Distribution of Income and Principal. After the payment of all reasonable and necessary expenses incurred in the management of the trust, the Trustee is authorized to distribute to or apply for the benefit of such beneficiary, so much of the net income and principal of his or her separate share of the trust as in the Trustee's absolute discretion deems appropriate. The exercise of this power by the Trustee is within the Trustee's sole discretion and the Trustee may accumulate the annual net income of each beneficiary's separate share of the trust to be added to such beneficiary's principal to whatever extent and in whatever amounts that the Trustee deems appropriate.

       Prior to the termination of this trust, it is the Grantor's desire but not the Grantor's direction, that the income and principal of each separate share of this trust so distributed or applied as provided above, be distributed to or applied primarily for the health, education, maintenance and support of each beneficiary. To this end, it is the Grantor's desire that each beneficiary be provided a standard of living which is similar to the standard of living that is being enjoyed by their peers.

       For the guidance of the Trustee, the Grantor directs that all beneficiaries need not be treated the same; that one or more of the beneficiaries may be wholly excluded from any or all periodic distributions; and that

> the pattern followed in one distribution need not be followed in others.
>
> B. <u>Termination of Trust</u>. When such beneficiary has attained thirty (30) years of age, or upon his or her death prior to attaining the age of thirty (30) years, or if a disabled person when he or she, in my trustee's opinion, becomes free of such disability, this trust shall terminate as to his or her separate share, and the remaining principal and accumulated income of his or her separate share shall be distributed to such beneficiary, if living, otherwise to his or her issue, <u>per</u> <u>stirpes</u>, or if no issue, to his brothers and sisters, <u>per</u> <u>stirpes</u>.

Decedent and Mrs. Whiting are named the initial trustees under the disability section if a disability or incapacity occurs. If either of the trustees is unwilling to serve, and if the unwilling trustee fails to designate a successor trustee, then the successor trustee is first designated to be the surviving spouse. In the event that Mrs. Whiting survives decedent, her son, Charles Barry McKewen, is the next designated successor trustee.

4. <u>Trustee's Powers Concerning Disabled Beneficiaries</u>

Section 19 of the trust agreement, "Trustee's Powers", describes the trustee's powers regarding disabled beneficiaries as follows:

> D. In making any payment to a minor or disabled beneficiary, the Trustee may expend such payments for the benefit of the beneficiary or make such payments directly to the beneficiary, or to the beneficiary's parent, guardian, personal representative or to the person with whom the beneficiary resides, without having to look to the proper application of those

payments.  This section does not limit the Trustee's powers and must be construed to enable the Trustee to give each beneficiary the fullest possible benefit and enjoyment of all of the trust income and principal to which the beneficiary is entitled.

     5.   <u>State Law</u>

Section 27 of the trust agreement, "Applicable Law", provides that all questions concerning construction, validity, and administration of the trust shall be determined in accordance with Arkansas law.

<u>Discussion</u>

    A.   <u>Applicable Law</u>

     1.   <u>Marital Deduction</u>

Section 2001 imposes a tax on the transfer of the taxable estate of all decedents who are citizens or residents of the United States.  The amount of the tax is determined, in part, by the value of the taxable estate.  Sec. 2001(b).  Section 2051 defines the value of the taxable estate as the gross estate less deductions.  "For estate taxes, as for income taxes, 'Deductions are a matter of legislative grace, and a taxpayer seeking the benefit of a deduction must show that every condition which Congress has seen fit to impose has been fully satisfied.'" <u>Estate of Nicholson v. Commissioner</u>, 94 T.C. 666, 681-682 (1990).

Pursuant to section 2056(a), the estate may claim, as a marital deduction, the value of property passing to the surviving spouse.  As a general rule, the marital deduction is denied for a

"terminable interest".  Estate of Nicholson v. Commissioner, supra at 671.  A "terminable interest", generally, is a property interest that will terminate or fail "on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur".  Sec. 2056(b)(1).  An interest in the nature of a life estate, therefore, is ineligible for the marital deduction pursuant to section 2056(b)(5).  Estate of Nicholson v. Commissioner, supra at 671-672.

The Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, 95 Stat. 172, modified the rules for the marital deduction relating to terminable interests.  ERTA sec. 403(d)(1), 95 Stat. 302, added section 2056(b)(7), which allows a marital deduction for qualified terminable interest property (QTIP) interests.  Estate of Nicholson v. Commissioner, supra at 672.

Section 2056(b)(7)(B) provides in pertinent part:

> (7) Election with respect to life estate for surviving spouse.--
>
> * * * * * * *
>
> (B) * * * For purposes of this paragraph--
>
>> (i) In general.--The term "qualified terminable interest property" means property–
>>
>>> (I) which passes from the decedent,
>>>
>>> (II) in which the surviving spouse has a qualifying income interest for life, and
>>>
>>> (III) to which an election under

this paragraph applies.

(ii) Qualifying income interest for life.--The surviving spouse has a qualifying income interest for life if--

(I) the surviving spouse is entitled to all the income from the property, payable annually or at more frequent intervals, * * * and

(II) no person has a power to appoint any part of the property to any person other than the surviving spouse.

A QTIP interest is one in which a decedent passes to the surviving spouse a "qualifying income interest for life" and for which an election has been made. Sec. 2056(b)(7)(B)(i); Estate of Nicholson v. Commissioner, supra. Generally, when the surviving spouse has a "qualifying income interest for life", she is entitled to "all the income from the property, payable annually or at more frequent intervals". Sec. 2056(b)(7)(B)(ii).

A QTIP interest must meet the requirements of section 20.2056(b)-5(f), Estate Tax Regs. Estate of Nicholson v. Commissioner, supra at 672; sec. 20.2056(b)-7(d)(2), Estate Tax Regs.; see H. Rept. 97-201, at 161 (1981), 1981-2 C.B. 352, 378. Section 20.2056(b)-5(f), Estate Tax Regs., provides that a surviving spouse is entitled to "all the income from the property" if the effect of the trust is to give her the equivalent "beneficial enjoyment" of the trust estate as one who is "unqualifiedly designated as the life beneficiary" under the principles of the law of trusts. Generally, absent indications

to the contrary, the "designation of the spouse as sole income beneficiary for life of the entire interest or a specific portion of the entire interest will be sufficient". Sec. 20.2056(b)-5(f)(1), Estate Tax Regs.

   2.   Interpretation of a Trust Agreement

A determination of the nature of the interest that passes to the surviving spouse is made pursuant to the law of the jurisdiction under which the interest passes. Estate of Nicholson v. Commissioner, supra at 672-673. In the instant case, that is the law of Arkansas. The decisions of the State's highest court are conclusive as to that State's law. Commissioner v. Estate of Bosch, 387 U.S. 456 (1967).

In Aycock Pontiac, Inc. v. Aycock, 983 S.W.2d 915, 919-920 (1998), the Supreme Court of Arkansas stated:

   The cardinal rule in construing a trust instrument is
   that the intention of the settlor must be ascertained.
   Little Rock University v. Donaghey Found., 252 Ark.
   1148, 483 S.W.2d 230 (1972). In construing a trust, we
   apply the same rules applicable to the construction of
   wills. See Murphy v. Morris, 200 Ark. 932, 141 S.W.2d
   518 (1940).

      The paramount principle in the interpretation of
   wills is that the intention of the testator governs.
   In re Estate of Lindsey, 309 Ark. 596, 832 S.W.2d 808
   (1992). This intention is to be determined from
   viewing the four corners of the instrument, considering
   the language used, and giving meaning to all of its
   provisions, whenever possible. Id.; In re Estate of
   Conover, 304 Ark. 268, 801 S.W.2d 299 (1990). * * *
   The court should give force to each clause of the will,
   and only when there is an irreconcilable conflict
   between two clauses must one give way to the other.
   Estate of Lindsey, 309 Ark. 596, 832 S.W.2d 808. * * *

B.   Whether the Marital Deduction Trust Meets the
     Requirements of Section 2056(b)(7)

For the property in the marital deduction trust to be QTIP, it must be property:  (1) which passes from the decedent; (2) in which the surviving spouse has a qualifying income interest for life; and (3) as to which an election has been made.  Sec. 2056(b)(7)(B)(i).  The parties agree that the property passed from decedent and that a proper QTIP election was made. Respondent also states in his brief that "the requirements of * * * [section 2056(b)(7)] for treating the property that funded the Marital Deduction Trust as deductible initially appear to be met by the provisions of Section 8.  This includes the requirement that the surviving spouse be entitled to all of the net income produced by the trust's corpus."  We also note that in section 8 of the marital deduction trust, the trustee is directed to distribute the net income "at least annually", as provided by the statute.  Additionally, any income accrued but undistributed at the surviving spouse's death shall be paid to the surviving spouse's estate.

The issue is whether the terms of section 15 of the trust agreement, the disability section, which are incorporated into the marital deduction trust by section 8.D. of the trust agreement, restrict the surviving spouse's "qualifying income interest for life" under section 2056(b)(7)(B)(i)(II).  As discussed below, we find that the conflicting terms of sections 8

and 15 of the trust agreement must give way to decedent's intent to qualify for the marital deduction.

1.    Disability Section Is an Administrative Provision

Section 8.D. of the marital deduction trust entitled "Administrative Provisions" specifically incorporates by reference to section 15 the terms of the disability section and the other administrative provisions, sections 16 through 27, into the marital deduction trust.  Respondent argues that certain terms in the disability section defeat the surviving spouse's "qualifying income interest for life".  The estate argues that the disability section does not defeat the surviving spouse's "qualifying income interest for life".

Additionally, the estate argues that the disability section is merely a guardian substitute designation designed to avoid a costly court proceeding under Arkansas law to name a court-appointed guardian.  That is, if the settlors of a trust fail to designate a guardian in case of their incapacity, Arkansas law provides for the naming of a guardian through a court proceeding. See Ark. Code Ann. sec. 28-65-101(3) (Michie 1987) ("'Guardian' is one appointed by a court to have the care and custody of the person or of the estate, or of both, of an incapacitated person").  In this case, pursuant to the disability section, decedent and Mrs. Whiting each designated who would be their guardians.  Decedent designated Mrs. Whiting as his guardian; and

if she did not survive him, he named his cousin.  Mrs. Whiting
selected decedent as her guardian; and if he did not survive her,
she named her son.

      2.    <u>Terms Relating to Disability Section Create
               Conflict</u>

We find that the terms of the disability section conflict
with the terms of the marital deduction trust.  The provision of
the disability section pertaining to the trustee's specific power
to accumulate income conflicts with the terms contained in the
marital deduction trust pertaining to distributions of income.
The marital deduction trust provides that the trustee <u>shall</u>
distribute at least annually the net income of the trust to or
for the benefit of the surviving spouse.  Section 15.A. states
that "the Trustee <u>may</u> accumulate the annual net income" to which
the beneficiary is entitled.  (Emphasis added.)  The first
provision requires the trustee to distribute all of the income
from the marital deduction trust to or for the benefit of the
surviving spouse, while the second provision permits the trustee
to accumulate the surviving spouse's income received from the
marital deduction trust.

Where terms in a trust conflict, Arkansas law provides:  "In
construing a * * * [trust] a court should give force to each
provision thereof.  It is only if there is an irreconcilable
conflict between two clauses that one must give way to the
other."  <u>In re Estate of Lindsey</u>, 832 S.W.2d 808, 812 (Ark. 1992)

(citing <u>Fies v. Feist</u>, 224 S.W. 633 (Ark. 1920)); see also <u>Estate of Harp v. Harp</u>, 875 S.W.2d 490, 491 (Ark. 1994). "[I]t is * * * [the court's] duty to consider the * * * [trust] as a whole and to reach 'the real purpose and intention of the testator.'" <u>Angel v. Angel</u>, 655 S.W.2d 373, 374 (Ark. 1983) (quoting <u>Union Trust Co. v. Madigan</u>, 35 S.W. 349 (Ark. 1931)).

### 3. <u>Decedent Intended To Qualify for the Marital Deduction</u>

In interpreting two conflicting clauses, we must determine the decedent's intent, using the four corners of the trust agreement. See <u>Aycock Pontiac, Inc. v. Aycock</u>, 983 S.W.2d at 919-920; see also <u>In re Estate of Lindsey</u>, <u>supra</u> at 812 ("The paramount principle in the interpretation of wills is that the intention of the testator governs."). We find that, considering all language in the trust agreement, decedent's intent was to qualify for the marital deduction.

Decedent manifested his intent to qualify for the marital deduction in numerous ways. First, the trust agreement named two of the trusts in reference to the marital deduction: The "Marital Deduction Trust" and the "Non-Marital Deduction Trust". The name of a trust is evidence of decedent's intent.

Second, it is evident from the trust agreement that decedent intended to minimize Federal estate taxes through the use of the marital deduction. See <u>Estate of Todd v. Commissioner</u>, 57 T.C. 288, 294 (1971) (references to the marital deduction and

citations to section 2056 clearly establish that the trust's purpose was to secure the marital deduction). In valuing the assets to be placed in the marital deduction trust, the trust agreement states that decedent intended to "have the result of qualifying the marital deduction for estate tax purposes". Only assets which qualify for the marital deduction may be placed in the marital deduction trust. The amount of the distribution to the marital deduction trust is "the excess * * * of the decedent's taxable estate * * * over the exemption equivalent of the * * * unified credit". Additionally, the terms "marital deduction", "gross estate", and others are defined in the trust agreement as having the same meaning as the definitions found in the Internal Revenue Code.

Third, the circumstances surrounding the drafting of the trust indicate that decedent intended to qualify for the marital deduction. Decedent knew that he was terminally ill and hired specialized tax attorneys to draft the trust: Two are Arkansas board recognized specialists in tax law, one is a certified public accountant, and two have a master of laws in taxation. The intent of the draftsman of the marital deduction trust was to create a trust which qualified for the marital deduction.

We note that Estate of Walsh v. Commissioner, 110 T.C. 393 (1998), and Estate of Tingley v. Commissioner, 22 T.C. 402 (1954), affd. sub nom. Starrett v. Commissioner, 223 F.2d 163

(1st Cir. 1955), two cases pursuant to section 2056(b)(5) and its predecessor cited by respondent, are distinguishable from the facts of this case. In Estate of Walsh v. Commissioner, supra at 395, the trust provided that "If said spouse should at any time be determined as incompetent * * *, said spouse shall take no benefits hereunder and this Trust shall be treated and distributed as if said spouse had died". (Emphasis added.) The Court held the incompetency provision created a terminable interest which did not qualify for the marital deduction pursuant to section 2056(b)(5). Similarly, in Estate of Tingley v. Commissioner, supra at 403, the trust provided:

> such right of my wife to call for the transfer or conveyance to her of any part or parts or the whole of the principal of said first share shall cease in the case of her legal incapacity from any cause or upon the appointment of a guardian, conservator, or other custodian of her person or estate; and in the event of such legal incapacity, or appointment of any guardian, conservator or other custodian of her person or estate, my said wife or her guardian, conservator or other custodian shall cease to have any further right to the payment to her or such representative of any specified sum or of any part of the income from said first share, but my trustee shall thereupon and thereafter, during her life, have full power and discretion to use and apply such part of the net income of said first share for the benefit of my said wife or may pay such part thereof at any time or from time to time to her or to any such guardian, conservator or other custodian of my wife's person or estate as he may deem in his sole discretion to be wise and proper, and shall accumulate, invest or reinvest any part of said net income not so paid or applied by him as aforesaid and shall have power to add the same to the principal of said first trust or thereafter to disburse it to or for the benefit of my said wife, whether or not previously so added to such principal. [Emphasis added.]

The Court held that the testator intentionally chose to "cut off" his wife's right to income should one of the stated contingencies occur. Id. at 405. The surviving spouse's power of appointment was not exercisable in all events, and the interest did not qualify for the marital deduction under the predecessor to section 2056(b)(5). In both cases, the critical fact was that, in the event of incompetency or incapacity, the surviving spouse lost power over the corpus of the trust. See Estate of Walsh v. Commissioner, supra at 399-400.

Here, section 8 of the trust agreement provides that the trustee "shall" distribute at least annually the net income of the trust to or for the benefit of Mrs. Whiting. This is a positive and mandatory directive to the trustee which precludes the exercise of discretion. See Merchants Natl. Bank v. United States, 326 F. Supp. 384, 387 (N.D. Iowa 1971) (language permitting trustee to accumulate income found to be "void for repugnancy" as it directly conflicted with mandatory language requiring trustee to distribute income). We also note that pursuant to section 19.D. of the trust agreement, the trustee "must" provide Mrs. Whiting with the all of the trust income and principal to which she is entitled. In viewing the entire trust agreement and in construing the conflicting terms of the disability section in accordance with decedent's intent to obtain the marital deduction, we conclude that the terms of the

disability section do not restrict Mrs. Whiting's qualifying income interest for life pursuant to section 2056(b)(7)(B)(i)(II).

In light of our holding that the trust qualifies for the marital deduction pursuant to section 2056(b)(7), we need not address whether the disability section constitutes a valid facilitation of payment power under Rev. Rul. 85-35, 1985-1 C.B. 328.

In reaching our holding herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.