Wineland *v*. The Security Bank & Trust Co.

5-3376                                     383 S. W. 2d 669

Opinion delivered November 16, 1964.

*Kirsch, Cathey & Brown,* for appellant.

*Cecil Grooms,* for appellee.

Carleton Harris, Chief Justice. This appeal relates to the construction of a trust instrument. Arthur Wineland, an elderly widower, who contemplated remarriage, on February 9, 1959, conveyed certain farm lands (being all the property that he owned) to the Security Bank & Trust Company, as trustee. The bank executed a declaration of trust, the construction of which is now before this court. The trust instrument provides that the beneficiaries are Arthur Wineland (the settlor), the widow of Arthur Wineland, two sons, Albert Wineland and Oscar Wineland, and a daughter, Winnie Wineland Fletcher. Article II sets out the terms of the trust, and Article III

provides for the distribution of income. These are the pertinent sections that are at issue in this litigation, and they read as follows:

### ARTICLE II—Term of The Trust

"The Trust shall continue during the lifetime of Arthur Wineland, any widow that survives him, and Oscar Wineland, upon the death of the survivor of these three persons, the trust shall terminate and the trustee shall convey, pay over and distribute all remaining assets to the other beneficiaries named above, to-wit; Albert Wineland and Winnie Wineland Fletcher, in equal shares, if living. In the event either Albert Wineland or Winnie Wineland Fletcher dies before receiving full distribution from the Trust estate, his, or her, heirs shall take that which the one so dying would have taken, if living.

### ARTICLE III—Distribution of Income

"All net income from the Trust Estate, after payment of principal and interest on mortgage indebtedness, shall be distributed annually, or at such more frequent intervals as the trustee may elect, to Arthur Wineland, the trustor, during his lifetime, after the death of Arthur Wineland, net income shall be distributed to any widow surviving him. After the death of the trustor and his widow, if she survives, income shall be distributed as follows: The trustee is authorized to pay net income to, or for the son of Arthur Wineland, Oscar Wineland, but when the same shall be done, and to what extent, shall be determined by the son, Albert Wineland, if living, otherwise by the trustee. The discretion vested in Albert Wineland and the Trustee shall be uncontrolled, as it is not the intention to vest any beneficial interest in the Trust Estate in Oscar Wineland. Any net income of the Trust Estate not distributed, or paid to or for the benefit of Oscar Wineland, shall be divided equally between Albert Wineland and Winnie Wineland Fletcher."

Arthur Wineland died on May 8, 1962, leaving no surviving widow (divorce having intervened), but being

survived by the three children heretofore mentioned. On August 17, 1963, Oscar Wineland instituted suit against the Security Bank and against his brother and sister, alleging that, under the terms of Article III of the trust, he was entitled to receive the net income of the trust, subject only to any withholding that might be made because of some valid reason; that he was capable of handling the funds and that neither the bank nor his brother, Albert, had justified, or attempted to justify, in any manner, withholding the net income from him; that the actions of the bank and Albert Wineland were arbitrary and contrary to a proper interpretation of the trust instrument. It was further asserted that Albert Wineland had refused to make any payments to Oscar, except on the condition that Albert, individually, together with Winnie Fletcher, should receive like payments, and that this ''is contrary to and in violation of the terms of the declaration of trust, whereby the plaintiff is entitled to the net income of the trust estate during his lifetime.'' Oscar Wineland prayed for an accounting as against the trustee of all income received after the death of Arthur Wineland; that the bank should be charged with all expenditures which it had made, or permitted to be made, from the trust estate, other than mortgage loan payments, taxes and reasonable repairs; that personal judgment should be rendered against his brother, Albert Wineland, and sister, Winnie Wineland Fletcher, with respect to any sums they had received from the trust estate, and that the bank should be directed to pay to appellant the entire net income of the trust estate; further, that it should be enjoined from paying any portion to his brother and sister during his (Oscar's) lifetime, and that a declaratory judgment should be entered construing the declaration of trust and defining the rights of the bank and all beneficiaries.

Appellees answered, contending that Albert Wineland was given uncontrolled discretion in what should be paid to Oscar, and that, under the trust provision, any balance left should be divided between appellees, Albert Wineland and Winnie Fletcher. Appellees joined

in asking the court to declare the rights and responsibilities of the several parties to the litigation. At the conclusion of the trial, the court made extensive findings, holding that Albert Wineland and the bank, to date, had not been guilty of an abuse of discretion, and had not acted contrary to the provisions of the trust instrument in withholding certain trust income from Oscar. Albert Wineland had previously tendered a check for $200.00 to Oscar, preparing like checks for his sister and himself, but this payment was refused by appellant, and Albert then proposed to distribute an equal one-third of the net income from the trust estate which had accrued to date to each of the children, after deducting a sufficient amount for state and county taxes, and a reasonable reserve for other essential expenses, including repairs to improvements on the trust funds. The bank and Albert Wineland were directed to pay to Oscar Wineland one-third of the net income from the trust estate which had accumulated to date, after the withholdings heretofore mentioned, and with regard to the future, the court found:

"The defendant, Albert Wineland, has the discretionary power to postpone or withhold income payments in the event in the future, the plaintiff, Oscar Wineland, should become intemperate or other than thrifty with regard to the handling of his personal finances, with the determination as made by Albert Wineland to be conclusively upon all parties unless made contrary to any factual basis."

The request of Oscar for an injunction against the payment of any portion of the net income to his brother and sister was denied. The court, however, found that the bank had acted contrary to the provisions of the trust in permitting portions of the income to be used for the payment of expenses of the last illness of the decedent, Arthur Wineland, for his burial, and the erection of a monument, and the bank was directed to restore the amount so spent ($275.03). The costs of the action were assessed against the net income of the trust estate. From the decree entered, appellant brings this appeal,

contending that the court erred in not ordering that all the net income of the trust estate should be paid to appellant, and that the costs of the action should have been assessed against appellees, individually, without right of reimbursement from the income of the trust estate. Appellees cross-appeal from that portion of the decree wherein the bank was charged with the sums expended from the trust estate representing certain debts of the decedent, the funeral expenses, and expenses of the monument.[1]

The material facts in this litigation are not in dispute, and the parties also agree completely upon the meaning of one provision of Article III, *viz,* that Arthur Wineland, definitely intended that Oscar's wife or children should not acquire any ownership interest in the farm lands. From the evidence, it appears that Oscar, several years prior to the death of his father, had been in financial difficulties, and also had been very intemperate in his drinking habits. Oscar had, at one time, farmed some of his father's land (not here involved), but discontinued doing so in 1945, when that particular land was sold. The sale of the farm created some resentment and ill will, and Oscar moved to Michigan, where he lived for twelve years. Upon returning for visits, Oscar would visit his father, but there were still conflicts over the son's drinking habits. Apparently, Oscar quit drinking in 1960 or 1961, but his father never did learn of this fact before his death. Appellant asserts that the trust instrument was executed because of the fact that the father did not feel that Oscar was competent (because of habits) to properly handle his finances, but, inasmuch as Oscar's beneficiaries would never receive any part of the land, the elder Wineland intended that the son should receive all of the net income. Appellant says that this interpretation is strengthened because of the fact that Oscar is thirteen years older than his brother, Albert, and sixteen years older than his sister; that the father recognized that Oscar would, in all proba-

---

[1] Appellees also cross-appeal as to the assessment of the costs, contending that the costs should have been taxed against appellant individually.

bility die first, and that the other two children would still have the opportunity to enjoy the use of the property which had been placed in trust. Also, appellant insists that the father certainly would not have intended to punish his son because he had "reformed," and that an interpretation to the effect that Oscar was entitled to all of the money if he was in dire need, or if he became a public charge, but only entitled to a one-third portion if he conducted himself properly, has the effect of rewarding slothfulness, and punishing virtue. Oscar had testified that his brother, in discussing the provisions of Article III, had told him, "The way I see it, I can give you $1.00 or whatever I want to." Both Albert and his sister testified that they knew of no misconduct, lack of thrift, or any other fact relating to the personal habits of Oscar which would justify a refusal to pay the net income of the trust estate to appellant.

Albert took the position that his father had intended, in creating the trust, that Oscar would not be allowed to go in need, or become a public charge, and had accordingly left it up to the younger son to see that this did not happen; that if hungry and in need, Oscar would be entitled to receive up to the full amount of net income; that since Oscar was self-supporting, his position was the same as that of the other two children.

It would appear that the trustor had in mind that his daughter and younger son would, at least for some part of the time, participate in the net profits; otherwise, there would be no need for the provision, "any net income of the trust estate not distributed, or paid to or for the benefit of Oscar Wineland, shall be divided equally between Albert Wineland and Winnie Wineland Fletcher."

Appellant cites a number of cases to the effect that the language employed wherein Albert is given complete discretion to determine when, and to what extent, payments shall be made, is not, legally speaking, so broad as it appears. We agree that Albert is not permitted to act arbitrarily or without the exercise of reasonable

judgment. These cases need not be discussed since we concur that the holdings to this effect constitute sound law. For instance, Albert would not be permitted, under present circumstances, to give to his brother only $1.00, for this would constitute an arbitrary act. However, under the facts, as presented by the evidence, we conclude, as did the chancellor, that there has been no arbitrary action; and we are unable to agree with appellant that the division approved (one-third of the net income to each child) was improper. As to the argument that, under the construction rendered by the Chancellor, the son is being penalized for "turning over a new leaf," and that the father did not intend such action, we can only say that, under the evidence, Arthur Wineland apparently never considered this possibility. The trust agreement was executed by the settlor under the belief that his son was not competent to handle his affairs, since it seems to be undisputed that the elder Wineland did not know of the change in Oscar's habits. But in interpreting the provisions, we cannot consider what Arthur Wineland *might* have done if he had known this fact; rather, the trust can only be construed in the light of the father's knowledge at the time he executed the instrument.

It might be pointed out here that we do not pass upon Article III of the trust insofar as it relates to the future, *i.e.,* the power of Albert to hold or withhold trust income, or to determine whether Oscar would be entitled to a greater portion of such income, or the full amount, under a different set of facts. That question is not now before us.

We do not agree with appellant's contention as to the costs. While the complaint was filed against the bank, and the brother and sister, individually, the suit actually sought a construction of the trust agreement. In fact, part of the relief sought in the pleading is a prayer to construe the declaration of trust. Appellees also requested construction of the trust instrument. Under these circumstances, we think the Chancellor prop-

erly exercised his discrction in taking the costs against the trust estate.

We thus also dispose of that portion of the cross-appeal, but we find merit in the other argument advanced by appellees. In making this determination, it is not necessary that we discuss the question of the use of trust funds for the payment of the bills in question. At the time of his death, Arthur Wineland had a deposit of $352.77 in the bank. This money was used to apply on the debts heretofore mentioned, together with $275.03, which was taken from the trust income. The Chancellor directed that this latter amount be replaced in the trust estate by the bank. It will be recalled that, under Article III of the trust agreement, Arthur Wineland received the income from the trust, payable annually (or at more frequent intervals, if the trustee so elected). Wineland died on May 8, 1962, and the record does not reflect that any income for 1962 was ever distributed to him. Prorating the net income over the entire twelve months, Arthur Wineland's estate would be entitled to approximately one-third of $2,000.00, this figure representing the approximate net income for that year. The subsequent beneficiaries of the trust (succeeding Arthur Wineland) were not entitled to receive any net income until the father's death, which means that the settlor's estate was entitled to considerably more than $275.03. In *Rogoski, Admr.* v. *McLaughlin,* 228 Ark. 1157, 312 S. W. 2d 912, this court said:

"We are unable to agree with the trial court's conclusion that these paragraphs of the will had the effect of bequeathing to the surviving husband the entire net income for the first three months of 1956, most of this income having already accrued before Mrs. Upton's death on March 13. A will is ordinarily construed to speak as of the death of the testator, *Weeks* v. *Weeks,* 211 Ark. 132, 199 S. W. 2d 955, and as a general rule the beneficiary of a testamentary trust is entitled to the income only from the date of the testator's death. Rest., Trusts, § 234.''

We think that the Chancellor erred in charging the bank with these items, and that portion of the decree is accordingly reversed.

Affirmed on direct appeal; reversed in part on cross-appeal.