# IN THE MATTER OF the ESTATE of LINDSEY

92-179 832 S.W.2d 808

Supreme Court of Arkansas
Opinion delivered June 15, 1992

██

██ █

*Sharp & Sharp, P.A.*, by: *James B. Sharp* and *D. Franklin Arey, III*, for appellant.

*Ball, Mourton, Ltd.*, by: *E.J. Ball* and *Andy E. Adams*, for appellee.

ROBERT H. DUDLEY, Justice. The executor of the estate of Gertrude H. Lindsey filed a petition in probate asking for the construction of the testatrix's holographic will. The testatrix's grandchildren contend that under a clause of the will they take the residue of the estate, while her nephews contend that they take the residue under a different clause. The probate judge made a detailed finding of fact and issued a well-reasoned opinion which, in essence, construed the will to contain a particular residuary clause bequeathing the residue of a particular class of property to the grandchildren and to contain a general residuary clause bequeathing the general residue of the estate to the nephews. We affirm the trial court's determination.

The relationships to the testatrix of the two contesting classes of relatives are as follows. The testatrix was the wife, apparently the second wife, of John C. Lindsey, Sr., who died in 1969. Surviving him were the testatrix and a son, John C. Lindsey, Jr., who was the testatrix's stepson. John C. Lindsey, Jr. subsequently died leaving five surviving children, Mary Bob Rowe, John C. Lindsey, III, Floyd Eugene Lindsey, Charles Mark Lindsey, and Steven B. Lindsey. These five are referred to as the grandchildren. On the other side are the nephews, Charles Lamont Lindsey, Billy L. Lindsey, and Elmer B. Lindsey. Charles Lamont Lindsey and Billy L. Lindsey are the sons of Bee Lamont Lindsey, a deceased brother of John C. Lindsey, Sr. They were the nephews, by marriage, of the testatrix. In addition, Charles Lamont Lindsey and Billy L. Lindsey were her nephews by blood, since their mother was the testatrix's sister. Elmer B. Lindsey was not related by blood. In sum, the grandchildren of the testatrix were not related to her by blood, while two of the

three nephews were so related.

The business activities of the testatrix and her late husband, John C. Lindsey, Sr., provide guidance in interpreting the will. In 1929 John C. Lindsey, Sr. and his three brothers formed a partnership to conduct a mercantile and farming operation in the Caldwell community of St. Francis County. In 1942 they extended the partnership to include the ownership and operation of a cotton gin, and the partnership became "Lindsey Mercantile & Gin Company." This partnership was still in operation in 1985 when the testatrix died. As the original partners died through the years, the ownership of their interests changed, and the partnership agreement was amended to reflect those changes. In 1969, when John C. Lindsey, Sr. died, he owned 25 % of the partnership. He left 12 and 1/2 % of the partnership to his widow, the testatrix, and his other 12 and 1/2 % to his son, John C. Lindsey, Jr.

The partnership always maintained a capital account, a personal account, and an excess capital account, or a deficiency capital account, for each partner. The capital account represented the interest of each of the partners. The personal account paid each of the partner's personal and living expenses. Partnership expenses and the personal expenses of each partner were added at the end of each year and offset against the partnership income. The excess was placed in the capital account. This capital account represented the excess capital of a partner above the annual average of the partner's ownership. In the event a partner had excess capital in the capital account at the end of the year, the partnership gave him or her a promissory note for that amount. On the other hand, if there was a deficiency capital account, the partner gave a promissory note to the partnership and paid interest on that note each year.

In 1971 the testatrix and the other partners entered into a new partnership agreement, and, on January 1 of that year, her excess in the capital account amounted to $26,906.75. The partnership gave her a promissory note for that amount, plus interest. The 1971 partnership agreement used the term "interest" throughout the document to refer to "a partnership share." The testatrix wrote her will in October 1974. The partnership gave excess capital promissory notes to the testatrix each year

from 1974 to 1984, except for 1976. These notes were later transferred to her capital account. At the time the testatrix made her will she held at least one of the partnership's excess capital promissory notes.

The testatrix left an estate consisting of a home, farmland, household items, stock, certificates of deposit, the partnership interest, and cash. She bequeathed various items of personal property to specified relatives and ordered her home sold and the proceeds divided between two relatives. Any remaining real estate the testatrix owned and other assets not specifically devised make up the residue. The nephews contend that the will contains a residuary clause leaving the residue of the estate to them, while the grandchildren contend the will contains a residuary clause leaving the residue of the estate to them. As indicated earlier, the probate judge held that the nephews were entitled to the residue of the estate.

The holographic will is three and one-quarter pages long. Names of some of the beneficiaries are marked out and others added nearby. In some places a line with an arrow indicates the new beneficiary after the old one was marked out. At time punctuation is lacking and sentences are not complete, but no one questions the validity of the will. The first two and one-quarter pages make a number of specific bequests. The two clauses on page four are the ones giving rise to this dispute, and that page is photocopied in full as follows:

my Car. to Eddie Harris
My rings) Pear shaped Cluster
to Peg Lindsey)
① to Cheryl Harris
① to Lynne Harris
① to K Gullick
① 5,000.00 CD to Mark Lindsey
① 10,000.00 CD to Marauzite Parrish
Dining Room Suit to
Eddie Harris
all other Interests be
divided between Bill
Lamont & Bee Lindsey
Washer & Dryer & refrigator to
Eddie Harris
House which is half mine
be sale Procdes go to Bill
& Lamont, Captol Account
& all other Interest go to
Grand Children
Stereo to Jequey Lindsey
By Arthur H Lindsey
Mrs John Lindsey Sr

As can be seen, commencing eleven lines above the testatrix's signature, she left "All other Interests be divided between Bill Lamont and Bee Lindsey," referring to the nephews. Commencing four lines above the testatrix's signature, she left "Captol Account & all other Interest to Grand Children."

██ Obviously, the meaning of the language in the two clauses is not without question, and, because it is questionable, the probate judge had to resort to rules of construction in interpreting the language. The principal rules applicable to this case are the following. The paramount principle in the interpretation of wills is that the intention of the testator governs. *In re Estate of Conover*, 304 Ark. 268, 801 S.W.2d 299 (1990). This intention is to be determined from viewing the four corners of the will. *Id.* If possible, the will must be construed to give force and meaning to every clause and provision. *Walt* v. *Bevis*, 242 Ark. 644, 414 S.W.2d 863 (1967). The court may read the language used by the testator in light of circumstances existing when the will was written, but only if there is uncertainty about the testator's intentions from looking at the language used in the will. *In re Estate of Conover, supra.* Where any ambiguity exists in the will, such construction should be given it as favors the heirs-at-law in preference to persons not so closely related to the testator. *Walt* v. *Bevis, supra.* In construing a will a court should give force to each provision thereof. It is only if there is an irreconcilable conflict between two clauses that one must give way to the other. *Fies* v. *Feist*, 145 Ark. 351, 224 S.W.2d 633 (1920).

 Applying the above rules of construction to this case, it seems most unlikely that the testatrix intended to state that she left the general residue of her estate to one group and then turn around and irreconcilably again leave the general residue of her estate to another group. This seems especially true when both clauses can be construed to have meaning by reading the language used in the light of the circumstances existing when the will was written. When we examine the two provisions in that light, we see that at the time the testatrix prepared her holographic will she was a partner in a partnership that owned various businesses, she held a promissory note from the partnership capital account, and the partnership agreement in effect referred to partnership shares as "interests." Thus, it would seem that when the testatrix referred to the "Captol Account and all

other Interest" she was referring to the capital account, the promissory note reflecting her excess iri the capital account, and all her interest in the partnership. This is referred to as a particular residuary clause.

> [I]t is competent for a will to contain both a particular residuary clause and a general residuary clause or a number of particular residuary clauses. Hence, where a will contains two or more clauses apparently residuary in character, the court should ascertain whether or not one or more of them refers to a particular or limited residuum.

96 C.J.S. *Wills* § 798 (1957). This construction gives force to both provisions and makes "All other Interests be divided between Bill Lamont & Bee Lindsey," the general residuary clause. Thus, both clauses are given effect, and the nearest blood relatives are favored with the general residual clause.

■ Finally, we note that both clauses are followed by specific bequests, but that will not invalidate either clause. Although it is normal practice to do so, it is not necessary that residuary clauses come at the end of a will. *See* 96 C.J.S. *Wills* § 796 (1957).

Affirmed.