AYCOCK PONTIAC, INC., James H. Aycock III, John Aycock, and Elizabeth Aycock Mohon *v.* James Hervey AYCOCK Jr.

98-767 983 S.W.2d 915

Supreme Court of Arkansas
Opinion delivered December 21, 1998

[Petition for rehearing denied January 21, 1999.]

*Gregg, Hart & Farris*, by: *John C. Gregg*, for appellants.

*Womack, Landis, Phelps, McNeill & McDaniel*, by: *Tom D. Womack*, for appellee.

D ONALD L. CORBIN, Justice. This case involves the construction of a trust. Appellants James H. Aycock III (Chip), John Aycock (John), and Elizabeth Aycock Mohon (Beth) appeal the judgment of the Craighead County Chancery Court dismissing with prejudice their complaint seeking accounting and specific enforcement of a trust established by their father, Appellee James Hervey Aycock Jr. (Hervey). Appellants raise four points of error on appeal, which present issues of first impression and substantial public interest. Appellee raises one point on cross-appeal. Our jurisdiction is thus pursuant to Ark. Sup. Ct. R. 1-2(b)(1) & (4). We affirm the chancellor's ruling.

The chancellor's order reflects the following factual findings. As of December 1, 1971, Hervey was the owner of all the outstanding shares of stock of Aycock Pontiac, Inc., as represented by stock certificates number 1 for sixty shares and number 4 for fifteen shares, a total of seventy-five shares. The trust instrument dated August 1972 was prepared by attorney Donald F. Seay, who was then the corporate secretary of Aycock Pontiac, Inc. Hervey was the settlor and trustee of the trust; Beth, Chip, and John were the sole beneficiaries. The trust was revocable with a right of reversion. The trust agreement provided in pertinent part:

> 1. *TRUST PROPERTY*: The Settlor does hereby transfer and deliver to the Trustee, and his successors, nine (9) shares of the capital stock of Aycock Pontiac, Inc., copies of said certificates of stock so issued, are attached hereto, marked Exhibits "A", and "B", and "C", and made a part hereof, the receipt of which is hereby acknowledged by the Trustee, which, together with any other property which may hereafter be transferred by the Settlor or by any other persons to the Trustee, shall be held and administered by the Trustee for the uses and purposes hereinafter set forth, and to be subject to the terms, conditions, powers and agreements hereinafter set forth.

> 2. *NET INCOME*: The Trustee shall apply and distribute the net income and the principal of the trust estate as follows:

> (a) The Trustee shall pay the net income to Elizabeth Ann Aycock, James Hervey Aycock, III, and John William Aycock, until each of the children have completed their formal education or until they have each attained the age of twenty-five years, respectively, whichever first occurs; *thereafter, the Trustee shall deliver the entire remaining principal over to the above named absolutely, and this trust shall then terminate.*

> (b) Upon the death of any of the above named before completing his or her formal education, or before attaining the age of twenty-five (25), whichever occurs first, then the principal and any accumulated income of the trust shall revert to the Settlor, and that portion of this trust shall be at an end.
>
> . . . .

8. *SUCCESSOR TRUSTEE*: It is not intended nor directed that a successor trustee be named hereunder. In connection therewith, *it is the sole intention of Settlor to have this trust revoked upon his death, or at his discretion, and all property belonging to the trust estate shall revert to Settlor or his estate, absolutely, at such time.* However, in the event Settlor so desires, he may appoint a successor trustee hereunder by an instrument in writing duly acknowledged. Any successor trustee shall be bound to the terms and conditions as set forth in this instrument as well in any additional duties and obligations imposed upon such successor trustee by Settlor herein.

. . . .

11. *REVOCATION*: This trust shall be revokable in the following instances or occurrances [sic]:

(a) At the discretion of Settlor *at any time after execution* hereof[.]

. . . .

12. *PURPOSE*: *It is the Settlor's sole intention in creating this trust for his children to have sufficient funds with which to complete their formal education.* It is *not* intended that the beneficiaries hereunder receive their livelihood from this trust. [Emphasis added.]

On August 15, 1972, Aycock Pontiac, Inc., stock certificate number 4 for fifteen shares was canceled and replaced with certificate numbers 5, 6, 7, and 8. Certificate number 5 for three shares was issued to Hervey as trustee for Beth; certificate number 6 for three shares was issued to Hervey as trustee for Chip; certificate number 7 for three shares was issued to Hervey as trustee for John; and certificate number 8 for six shares was issued to Hervey. Hervey still retained certificate number 1 for sixty shares.

On June 17, 1974, stock certificate number 8 for six shares was canceled and replaced with certificate numbers 9, 10, and 11. Certificate number 9 for two shares was issued to Hervey as trustee for Beth; certificate number 10 for two shares was issued to Hervey as trustee for Chip; and certificate number 11 for two shares was issued to Hervey as trustee for John.

On November 7, 1974, stock certificate number 1 for sixty shares was canceled and replaced with certificate numbers 12, 13,

and 14. Certificate number 12 for twenty shares was issued to Hervey as trustee for Beth; certificate number 13 for twenty shares was issued to Hervey as trustee for Chip; and certificate number 14 for twenty shares was issued to Hervey as trustee for John. As of November 7, 1974, certificate numbers 5, 6, 7, 9, 10, 11, 12, 13, and 14 were held by Hervey as trustee, in trust, in accordance with the trust agreement and subject to the terms, conditions, powers, and agreements set forth therein. No stock certificate of the corporation was ever issued to any of the individual Appellants.

Sometime after 1978 and most likely in 1986, Hervey reached the decision to revoke the trust agreement. Hervey communicated his decision to revoke the trust to Mr. Seay, the corporate secretary, who was in possession of the corporate stock records, including all of the issued stock certificates. Hervey instructed Mr. Seay to cancel all stock certificates which had been issued to him as trustee for the three children, and Mr. Seay did so. The word "cancelled" was handwritten across the face of certificate numbers 5, 6, 7, 9, 10, 11, 12, 13, and 14. Certificate number 15 for seventy-five shares of stock, the total outstanding shares of the corporation, was dated December 15, 1986, and issued in Hervey's name. No other certificates have been lawfully issued by the corporation subsequent to certificate number 15.

The chancellor concluded that the express purpose of the trust was to fund the children's formal education, and not that they should receive their livelihood from the trust. He specifically found that such purpose had been fulfilled, as Beth and Chip completed their formal education in 1981, while John completed his formal education in 1982. The chancellor found that Hervey had financially contributed to the formal education of each of his three children, but that the greater share of their education was contributed by the children's grandfather, J. Hervey Aycock Sr. The chancellor recognized that some of the terms of the agreement were in conflict, specifically that section 2 was in conflict with sections 8, 11, and 12. Despite those conflicts, the chancellor concluded that the trust must be construed in harmony with the settlor's intent. The order reflects in pertinent part:

Notwithstanding the finding that revocation of the Trust occurred after March 2, 1985, in construing the Trust as a whole, and in giving effect to the intent of the settlor/trustee, and applying the law to the facts, *the Court holds that such purpose of the Trust has been attained; that Defendant did not intend that Plaintiffs receive their livelihood from the Trust; that under the conflicting provision of the Trust and under operation of law, the Trust should cease to exist, and the trust estate (shares of stock) should revert to Defendant, as settlor and sole shareholder of Aycock Pontiac, Inc.*

The Court further holds, based on the facts, that it would be inequitable to enforce the terms of Section 2 of the Trust to the exclusion of the other terms of the Trust, including Sections 8, 11, and 12. [Emphasis added.]

## *Arguments on Appeal*

Appellants argue that the chancellor erred in making the following rulings: (1) that Hervey retained the right of revocation of the trust after the trust terminated by its own terms; (2) that the purpose of the trust had been attained, notwithstanding that the revocation of the trust occurred after March 2, 1985, when John turned twenty-five years old; (3) that the trust should cease to exist and the trust estate should revert to Hervey as settlor and sole shareholder of Aycock Pontiac, Inc.; and (4) that it would be inequitable to enforce the terms of section 2 to the exclusion of the other terms of the trust, including sections 8, 11, and 12. For the reasons stated below, we affirm the chancellor's conclusions.

■ We try chancery cases *de novo* on the record, but we do not reverse a finding of fact by the chancellor unless it is clearly erroneous. *Webber v. Webber*, 331 Ark. 395, 962 S.W.2d 345 (1998). The evidence on appeal, including all reasonable inferences therefrom, and the findings of fact by a judge must be reviewed in a light most favorable to the appellee. *Looper v. Madison Guar. Sav. & Loan Ass'n*, 292 Ark. 225, 729 S.W.2d 156 (1987). We defer to the superior position of the chancellor to judge the credibility of witnesses. *Noland v. Noland*, 330 Ark. 660, 956 S.W.2d 173 (1997); *Holaday v. Fraker*, 323 Ark. 522, 920 S.W.2d 4 (1996).

■ ■ In the absence of a statute to the contrary, a settlor may create a trust for any lawful purpose, and the trust may be created for his own benefit as well as the benefit of another. *Richards v. Worthen Bank & Trust Co.*, 261 Ark. 890, 552 S.W.2d 228 (1977). A settlor has the power to reserve the right to revoke the trust in whole or in part. *Id.* The cardinal rule in construing a trust instrument is that the intention of the settlor must be ascertained. *Little Rock University v. Donaghey Found.*, 252 Ark. 1148, 483 S.W.2d 230 (1972). In construing a trust, we apply the same rules applicable to the construction of wills. *See Murphy v. Morris*, 200 Ark. 932, 141 S.W.2d 518 (1940).

■ The paramount principle in the interpretation of wills is that the intention of the testator governs. *In re Estate of Lindsey*, 309 Ark. 596, 832 S.W.2d 808 (1992). This intention is to be determined from viewing the four corners of the instrument, considering the language used, and giving meaning to all of its provisions, whenever possible. *Id.; In re Estate of Conover*, 304 Ark. 268, 801 S.W.2d 299 (1990). The court may read the language used by the testator in light of the circumstances existing when the will was written, *but only if* there is uncertainty about the testator's intentions from looking at the language used in the will. *Estate of Lindsey*, 309 Ark. 596, 832 S.W.2d 808. *See also Wineland v. Security Bank & Trust Co.*, 238 Ark. 625, 383 S.W.2d 669 (1964) (holding that the terms of a trust may only be construed in light of the settlor's knowledge at the time he executed the instrument). The court should give force to each clause of the will, and only when there is an irreconcilable conflict between two clauses must one give way to the other. *Estate of Lindsey*, 309 Ark. 596, 832 S.W.2d 808. "[T]he last clause in the will governs in ascertaining a testator's intention in case there is any conflict." *Walt v. Bevis*, 242 Ark. 644, 654, 414 S.W.2d 863, 869-70 (1967) (citing *Stayton v. Stayton*, 198 Ark. 1178, 132 S.W.2d 830 (1939); *Thomason v. Phillips*, 192 Ark. 107, 90 S.W.2d 228 (1936); *Bowen v. Frank*, 179 Ark. 1004, 18 S.W.2d 1037 (1929); *Gist v. Pettus*, 115 Ark. 400, 171 S.W. 480 (1914); *Little v. McGuire*, 113 Ark. 497, 168 S.W. 1084 (1914)).

■ Appellants first argue that the chancellor erred in ruling that Hervey retained the right of revocation after the trust termi-

nated by its own terms. They assert that Hervey could not have revoked the trust after they had each completed their formal education, as section 2(a) of the trust specifically provided that at such time the trust property was to be turned over to them. Appellants' argument is without merit because the chancellor made no such finding. Instead, the chancellor concluded that despite Hervey's failure to timely revoke the trust, the purpose of the trust had been attained and, therefore, the trust should terminate, and the property therein should revert to Hervey.

Appellants' remaining three arguments pertain to the purpose of the trust and the reversion of the trust property to Hervey. The chancellor's order reflects that he ascertained the settlor's intent from the entire trust agreement, viewing the four corners of the document:

> Section 2 requires the trustee (also the settlor) to apply and distribute the net income and principal of the trust estate (Aycock Pontiac, Inc. shares of stock) in a particular way. The net income was to pay the beneficiaries' formal education expenses until they all reached age 25 or until they completed their formal education, whichever occurred first. The youngest child became 25 on March 3, 1985. All received their formal education. Furthermore, after this specified event, the trustee was required to deliver the entire remaining principal to the beneficiaries absolutely, then the Trust was to terminate.

> However, under Section 11, the Trust states it was revocable at the discretion of settlor at any time after execution . . . .

> Section 8 contains the reversion clause. It states it is the sole intention of the settlor to have this Trust revoked upon his death, *or at his discretion,* and all property belonging to the trust estate would revert to settlor or his estate absolutely, at such time. (Emphases added)

> In fact, during [another trial], Defendant (settlor/trustee) testified he thought the trust estate reverted to him upon the triggering event in Section 2 of the Trust. Obviously, this written provision did not provide that.

> Finally, Section 12 sets forth the express purpose of the Trust: to have sufficient funds for the beneficiaries to complete

their "formal education." It is not intended that the beneficiaries receive their livelihood from this Trust.

The chancellor found that although the foregoing terms of the agreement were contradictory, the settlor's express intent was to provide sufficient funds for the children's formal education. The chancellor found further that the purpose of the trust had been accomplished, finding that all three children had completed their formal education. We cannot say that the chancellor's findings were clearly erroneous.

The aforementioned provisions of the trust were contradictory. Specifically, section 2(a), which provided that the remaining trust property was to be turned over to the individual Appellants upon completion of the formal education or their attainment of age twenty-five, whichever occurred first, was in direct conflict with section 11, which provided that the settlor retained the right to revoke the trust, at his discretion, "at any time after execution hereof[.]" In this respect, section 2(a) was also in conflict with section 8, which also entitled the settlor, at his discretion, to revoke the trust and that, at such time, the property of the trust should revert to him. Moreover, and perhaps most significantly, section 2(a) conflicted with the express purpose of the trust provided in section 12, the last section in the trust agreement, that the trust was to fund Appellants' education, but was *not* intended to provide them their livelihood. This stated purpose was supported by the testimony given by Hervey and Mr. Seay, the attorney who composed the trust agreement.

■ Appellants' argument that the actual purpose of the trust was to prevent Hervey's future wife from having any claim on the stock is unpersuasive. The purpose of the trust is clearly and unambiguously stated in the terms of the agreement itself. As such, testimony to the contrary should not have been permitted. Oral testimony is admissible only for the purpose of showing the meaning of the words used in the instrument when they are ambiguous, and not to show what the settlor intended, *as distinguished from his expressed words*. *See Estate of Conover*, 304 Ark. 268, 801 S.W.2d 299.

 In sum, under the decisions rendered by this court, it is the chancellor's duty to reconcile the conflicting provisions of the trust in an attempt to give meaning to every provision of the trust agreement, with consideration of the paramount principle that the settlor's intention governs. The chancellor here did exactly that, ruling that because the express purpose of the trust had been accomplished, it would be inequitable to enforce the terms of section 2(a) to the exclusion of the other provisions pertaining to Hervey's rights of revocation and reversion, as well as the stated purpose of the trust. This ruling is consistent with the general law regarding termination of trusts:

> If by the terms of the trust the trust is to continue only until the expiration of a certain period *or until the happening of a certain event*, the trust will be terminated upon the expiration of the period or the happening of the event.

*Restatement (Second) of the Law on Trusts* § 334 (2d ed. 1959) (emphasis added). Here, the chancellor found that the specified event was the completion of the children's formal education, which happened when the youngest child, John, graduated from college in 1982. Accordingly, we conclude that Appellants have failed to show that the chancellor erred in making his decision. Therefore, we affirm.

### Cross-Appeal

Appellee cross-appeals on the ground that the chancellor erred in finding that he took no effective action to revoke or cancel the trust until after March 2, 1985. We do not reach the merits of this argument as Appellee, the successful party below, seeks no affirmative relief on this point, only that the chancellor's final judgment be affirmed.

 A cross-appeal is an appeal by an appellee who seeks something more than was received in the trial court. *Arkansas Dep't of Fin. & Admin. v. Pharmacy Assocs.*, 333 Ark. 451, 970 S.W.2d 217 (1998); *Flemings v. Littles*, 324 Ark. 112, 918 S.W.2d 718 (1996). A cross-appeal is required only when the appellee seeks some affirmative relief that he or she failed to obtain in the trial court. *Arkansas-Oklahoma Gas Corp. v. Lukis Stewart Price*

*Forbes & Co.,* 306 Ark. 425, 816 S.W.2d 571 (1991); *Bowen v. Danna,* 276 Ark. 528, 637 S.W.2d 560 (1982). A cross-appeal is not necessary, however, when the appellee won the case below and merely asks that the judgment be affirmed on a different basis. *Id.* Because we affirm on direct appeal, we need not decide if there are additional reasons to affirm the case.

Affirmed on direct appeal and cross-appeal.

BROWN, J., concurs.

NEWBERN and IMBER, JJ., dissent.

ROBERT L. BROWN, Justice, concurring. I concur with much of the reasoning and certainly the result in the majority opinion and write only to emphasize one facet of the opinion. The Trust Agreement sets out what appears to be a conflict between the settlor/trustee's right to revoke the trust at his discretion *at any time,* and the termination of the trust by delivery of the stock to the beneficiaries after they have all attained age twenty-five, or completed their education. Thus, under the Trust Agreement either the settlor could terminate the trust, or it is terminated by a transfer of the stock. I conclude that the settlor/trustee effectively terminated the trust by not delivering the stock to the beneficiaries.

My decision in this case is guided by the termination clause in the Trust Agreement, which reads: "thereafter [after the last child has been educated or reaches age twenty-five], the Trustee shall deliver the entire remaining principal over to the above named absolutely, and this trust shall then terminate." The settlor/trustee never delivered the trust *res* to his three children as required. The question then is whether his failure to deliver the stock was a breach of the Trust Agreement or a revocation by the settlor/trustee. I conclude it was a revocation.

Had Hervey Aycock served only as trustee and refused to deliver the property under the trust's terms, it would certainly have been a breach of trust. But Hervey Aycock was also the creator of the trust, as settlor, with fulsome powers to revoke it at any

time at his discretion. Hence, he had the power to terminate the trust on his own. It is axiomatic that the intent of the settlor is an important consideration in enforcing a trust. *Richards v. Worthen Bank & Trust Co*, 261 Ark. 890, 552 S.W.2d 228 (1977); *Anderson v. Ryland*, 232 Ark. 335, 336 S.W.2d 52 (1960). By not transferring the stock to his children after they were educated and were age twenty-one or older, Aycock as settlor effectively revoked the trust and terminated it.

I would give deference to the settlor's intent and powers and affirm the trial court's decision for that reason.

D AVID NEWBERN, Justice, dissenting. When it is possible to so do, we ascribe meaning to each clause of an instrument. Only when there is an *irreconcilable* conflict between two clauses must one give way to another. *See In Re Estate of Lindsey*, 309 Ark. 596, 832 S.W.2d 808 (1992). When there is no conflict among the provisions, all provisions should be taken into consideration in determining the intent of the testator. *Hughes, Guardian v. Edwards*, 198 Ark. 673, 130 S.W.2d 713 (1939). In the trust instrument at issue, there is no irreconcilable conflict among the clauses. The Chancellor erred in failing to give effect to the provision terminating the trust when the youngest beneficiary reached age 25 or when each beneficiary completed his or her formal education, which ever occurred first.

First, the majority permits disregard of the termination provision because the trust instrument allowed the trustee to terminate the trust at any time. I certainly agree with the quotation from the *Restatement (Second) of the Law on Trusts* § 334 (2d ed. 1959) that appears in the majority opinion as follows: "If by the terms of the trust the trust is to continue only until the expiration of a certain period *or until the happening of a certain event,* the trust will be terminated upon the expiration of the period or the happening of the event. [Emphasis supplied.]" The event in this case was the completion of formal education or the reaching of age 25 by the beneficiaries. While it could possibly be argued that the language of section 2. of the instrument provided for termination of the trust only upon distribution, such an interpretation files in

the face of the requirement that "the Trustee shall deliver the entire remaining principal to the above named [beneficiaries] absolutely, and this trust shall then terminate." That language leaves little doubt that the settlor-trustee simply failed to do that which he was required to do by the instrument when the trust purpose had been served and the trust was at an end. The majority opinion suggests that the settlor could terminate the trust after it terminated by its own terms. In my view, that is an illogical proposition.

Secondly, the majority holds it was not the intent of the settlor that the proceeds be distributed to the beneficiaries because the trust was not intended to provide for the livelihood of the beneficiaries. There is nothing inconsistent about the expression of that intent and the clear statement that the principal was to be distributed to the beneficiaries at the specified time. Even if the language cited could be said to apply to the trust principal after termination of the trust and distribution of the remaining principal to the beneficiaries, nothing in the record suggests that the beneficiaries needed or intended to use that which had been the trust principal for their livelihood.

The Chancellor's decision should be reversed and the case remanded for an order requiring distribution of the trust assets to the beneficiaries in accordance with the terms of the trust instrument.

I respectfully dissent.

IMBER, J., joins in this opinion.