Dennis THINN *v.* Elizabeth PARKS

CA 02-05 · 83 S.W.3d 430

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered August 28, 2002

[Petition for rehearing denied October 3, 2002.]

*Evans & Evans Law Firm,* by: *James E. Evans, Jr.,* for appellant.

*Morris & Butler, P.A.,* by: *Lisa Reeves Butler,* for appellee.

LARRY D. VAUGHT, Judge. This case involves the interpretation of a trust agreement. Appellant Dennis Thinn appeals the trial court's decision that distributed various parts of the trust estate and removed him as co-trustee. He also challenges the court's denial of certain expenses he allegedly incurred in his capacity as co-trustee. We agree that the court should have considered his expenses and we, therefore, remand that portion of the order. However, we affirm the trial court on all other issues.

The settlor of the trust was Esther L. King. Appellant and appellee were two of Mrs. King's children, and, at the time of Mrs. King's death, co-trustees of the trust. The primary issue in the case is the alleged conflict between two provisions of the trust agreement. Section 1.4 of the original trust defines the trust estate as specific pieces of real and personal property described in schedule A attached to the instrument, plus "any cash, securities or other personal or real property which the Trustee may, pursuant to any and all provisions hereof, at any time hereafter, hold or acquire . . . for the uses and purposes and upon the terms and conditions herein set forth."

Section 3.1, as amended by the Third Amendment to the Trust, sets forth the procedures for the administration and distribution of the trust on the death of the settlor. This case arose after Mrs. King's death. Subsections (a) through (f) set out the distribution of various tangible and intangible items of personal property. Subsection (g) sets forth the administration and distribution of the residence, and subsection (h) is a residuary clause for the distribution of any remaining assets of the trust. The conflict and alleged ambiguity occurs in subsection (g), which provides in part:

> My residence shall continue to be held in Trust herein to be administered and distributed for the benefit of my son, Dennis A. Thinn. The Trustee shall distribute to my son, Dennis A. Thinn, from the trust estate so much of the principal and income of the trust as the Trustee in its sole discretion shall deem necessary for his health, maintenance, and support. All undistributed income shall be added to principal at least annually. . . .

In order to give meaning to all other subsections of 3.1, the trial court found that the "trust estate" in subsection 3.1 (g) referred only to the residence. This interpretation is consistent with the purpose of section 3.1, namely, to hold, administer, and distribute the trust estate at the settlor's death.

The rule we follow with regard to construction of a trust is that the intent of the testator (settlor in a trust) governs, and that the intent is to be determined within the four corners of the instrument, considering the language used and giving meaning to all provisions, whenever possible. *Aycock Pontiac, Inc. v. Aycock*, 335 Ark. 456, 983 S.W.2d 915 (1998). Collateral evidence will be considered only when there is uncertainty about the testator's intentions from looking at the language of the instrument. *Id.* The determination of whether there is an ambiguity is a matter of law. *See Coble v. Sexton*, 71 Ark. App. 122, 27 S.W.3d 759 (2000).

In this case, the trial court allowed the witnesses, including the attorney who drafted the trust, to testify to their understanding of the settlor's intent. Absent a finding of ambiguity by the court, this testimony should not have been considered. *Arkansas Presbytery of the Cumberland Presbyterian Church v. Hudson*, 344 Ark. 332, 40 S.W.3d 301 (2001). However, the court, in its order, did not refer to the testimony and interpreted section 3.1 by referring to the trust instrument itself to discern Mrs. King's intent. Even if the court considered the inadmissible testimony, in our de novo review we may affirm the trial court on any basis supported in the record. *See Moon v. Moon Enter.*, 65 Ark. App. 246, 986 S.W.2d 134 (1999).

We agree with the trial court's interpretation of section 3.1 (g). Mrs. King's intent was to set forth the disposition of the

residence on her death. Only that share of the trust estate was to be continued in trust for the benefit of appellant. All other shares were finally distributed by subsections (a) through (f) and (h). At appellant's death the residence, or any principal or income derived therefrom, will be distributed by subsection 3.1 (h). This interpretation is the only one that gives meaning to all provisions of the trust. Subsection (c) and (d) of section 3.1, which precede subsections (g) and (h), direct distribution of tangible personal property not distributed by subsection (b). If Mrs. King had intended that this tangible personal property remain in the corpus of the trust, then the directives of subsection (c) and (d) are unnecessary as subsection (h) would distribute the property.

In accord with its determination that the "trust estate" implicated in section 3.1(g) applied only to Mrs. King's residence, the trial court ordered appellant to produce all items of personal property listed in the trust agreement and its attachments that were still in his possession and to ship the items to the intended recipients. The court further ordered that all items of personal property that were not listed in the trust agreement and its attachments be divided between appellee and appellant, and if an amicable resolution could not be reached between the two litigants, the court ordered that the items were to be sold and the proceeds divided equally between the two. Appellant argues that the trust discouraged a "liquidation" of the personal property and that such personal property was to remain in the trust.

■ ■ Our affirmative resolution of the first issue on appeal forecloses appellant's other challenges concerning the propriety of the distribution of the remaining trust assets and therefore we affirm the trial court's distribution determination. Additionally, the trial court's order of a forced "liquidation" of the personal property in the event of disagreement is supported by the trust agreement. Section 4.1(l) provides that distributions may be made in money, in kind, or partly in money and partly in kind. However, the ancillary matter of appellant's entitlement to reimbursement for certain expenses he allegedly incurred while he served as a co-trustee warrants further examination. Specifically, appellant argues that the court erred in refusing to order the trust

to reimburse him for expenses he incurred for Mrs. King's autopsy and funeral, personal and real property taxes, homeowner's insurance, shipping of the trust properties, auto repairs, automobile insurance, medical and pharmaceutical expenses, clothing, attorney's fees, and upkeep of the residence. The trust agreement specifically contemplates such expenses, requiring in Section 3.1 "payment or provision for payment of any claim [or] expenses. . .which the Trust determines should be paid from the trust. . . ." Some of the expenses claimed by appellant are arguably trust debts; therefore, we remand for the consideration of expenses appellant incurred while serving as co-trustee.

■ ■ The third issue is the removal of appellant as co-trustee. The court removed him because he refused to communicate with or cooperate with his co-trustee. The *Restatement of the Law, Second, Trusts*, Section 107 (a) (1959), lists these grounds as appropriate for removal. The removal of a trustee is in the sound discretion of the trial court; its decision will not be overturned unless there is an abuse of that discretion. *Ashman v. Pickens*, 12 Ark. App. 233, 674 S.W.2d 4 (1984). The factual findings of the court leading to this conclusion are supported in the record and there is no abuse of discretion.

■ Although this case cries out for the appointment of a corporate fiduciary to administer the trust, and the appellant argues for that consideration, there is no indication that the request was specifically ruled on by the trial court. Therefore, we do not reach the issue because it was not preserved by appellant. *Gatlin v. Gatlin*, 306 Ark. 146, 811 S.W.2d 761 (1991).

Affirmed in part; remanded in part.

STROUD, C.J., CRABTREE and ROAF, JJ., agree.

HART and BIRD, JJ., dissent.

JOSEPHINE LINKER HART, Judge, dissenting. In brief, part of the dispute between the parties concerns subparagraphs (g) and (h) of paragraph 3.1 and the consequent disposition of in excess of $100,000 in an investment portfolio. Subparagraph (g) provides as follows:

My residence shall continue to be held in Trust herein to be administered and distributed for the benefit of my son, Dennis A. Thinn. *The Trustee shall distribute to my son, Dennis A. Thinn, from the trust estate so much of the principal and income of the trust as the Trustee in its sole discretion shall deem necessary for his health, maintenance and support.* All undistributed income shall be added to principal at least annually. For so long as reasonably practicable and for so long as he should desire to do so, my son shall be allowed to live in the residence. Upon the sale of the residence, the proceeds shall be used (whether by the payment of rent or the purchase of a new residence) to provide my son with a place to live. In all events, this subparagraph shall be construed to require the Trustee to provide shelter for my son, and to the extent funds are available to provide for his health, maintenance and support needs, and that the Trustee should be liberal in this regard. Upon my son's death, the balance remaining in this share of the trust estate, if any, shall be distributed as set forth in subparagraph (h) herein.

(Emphasis added.) Subparagraph (h) provides as follows:

The remaining trust estate shall be divided into as many equal shares as there are then living children of mine plus one if my stepdaughter, Pemle Ennis or her daughter, Amanda Beth Ennis, is then living, and distributed as follows:

(i) One share to my step-daughter, Pemle Ennis, if she is then living.

(ii) One share to my son, Dennis A. Thinn, if he is then living.

(iii) One share to my daughter, Elizabeth Anne Parks, if she is then living.

(iv) One share to my daughter, Marilyn Joy Rood, if she is then living.

In the event that Pemle Ennis and all my children should predecease me, then the remaining trust estate shall be distributed to Amanda Beth Ennis, and to my grandchildren . . . in equal parts share and share alike, per capita.

The majority states that the phrase "trust estate" in subparagraph (g) refers only to King's residence, concluding that "[t]his

interpretation is consistent with the purpose of section 3.1, namely, to hold, administer, and distribute the trust estate at the settlor's death." In my view, the majority can reach this conclusion only by ignoring the express provision in subparagraph (g) that "[t]he Trustee shall distribute to my son, Dennis A. Thinn, from the trust estate so much of the principal and income of the trust as the Trustee in its sole discretion shall deem necessary for his health, maintenance and support." It is indeed worrisome that the majority does not discuss the large sum of money to be distributed or explain why appellant is not entitled to some portion of it under subparagraph (g). In construing trusts, whenever possible we are required to give meaning to all provisions of the trust document, *Aycock Pontiac, Inc. v. Aycock*, 335 Ark. 456, 463, 983 S.W.2d 915, 919 (1998), and the majority does not provide any reasons for ignoring either this rule of construction or that portion of subparagraph (g).

My understanding of subparagraph (g) is as follows: King's residence is to be held in trust for the benefit of appellant. Further, the trustee must distribute "*so much* of the principal and income of the trust" as is necessary for appellant's "health, maintenance and support." (emphasis added). If the residence is sold, the proceeds are to be used to provide appellant with a place to live. Upon appellant's death, the remaining balance of this share, that is, the items that were to be distributed to appellant, specifically, the residence or proceeds from its sale and so much of the principal and income necessary to provide him with support, is to be distributed in accordance with subparagraph (h).

Subparagraph (h) provides that all items that were not distributed by the previous subparagraphs, including subparagraph (g), are to be distributed in, at most, four equal shares. In my view, the items to be distributed include: (1) echoing the language from subparagraph (g), "so much of the principal and income of the trust" that was *not necessary* for appellant's "health, maintenance and support"; (2) the residence or the remaining balance of proceeds from its sale; and (3) the remaining balance of any funds that were to be distributed to appellant for his "health, maintenance and support" in subparagraph (g).

Giving consideration to all its provisions, the trust agreement unambiguously requires that appellant *also* be given "so much of the principal and income of the trust" as is necessary for appellant's "health, maintenance and support." I respectfully dissent.

BIRD, J., joins.